UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LEONARD F. WRIGHT,

                                    Petitioner,

                                                              9:12-CV-01861

v.

                                                              (BKS/TWD)

SUPERINTENDENT,

                                    Respondent.
_____

APPEARANCES:                              OF COUNSEL:

LEONARD F. WRIGHT
07-B-1667
Petitioner pro se
Coxsackie Correctional Facility
P.O. Box 999
Coxsackie, New York 12051

HON. ERIC T. SCHNEIDERMAN
Attorney General for the State of New York        PAUL B. LYONS, ESQ.
Counsel for Respondent                            Assistant Attorney General
120 Broadway
New York, New York 10271


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

## I.      INTRODUCTION

        Pro se Petitioner Leonard F. Wright filed a petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254 on October 23, 2012.  (Dkt. No. 1.)  Respondent moved for and was granted

permission to file an initial response to the petition limited to the issue of timeliness. (Dkt. Nos.

10 and 11.)  Respondent thereafter filed his answer and memorandum of law seeking dismissal of

the petition as untimely, along with a copy of the state court record.  (Dkt. Nos. 12-14.)

Petitioner filed a traverse, which included a memorandum of law and affidavit arguing that the statute of limitations should be equitably tolled because he was unable to file a timely petition due to mental illness.  (Dkt. No. 15.)

This Court, after review and analysis of Respondent's memorandum of law, Petitioner's traverse, and relevant portions of the state court record, recommended in its Order and Report-Recommendation that Respondent's motion to dismiss on timeliness grounds be granted for the reasons set forth therein.  (Dkt. No. 23.)  The District Court concluded that dismissal on timeliness grounds at that juncture was improper because Petitioner's mental health records had not been obtained and reviewed by the Court, rejected the recommendation, and referred the matter back to this Court for further proceedings.  (Dkt. No. 24.)

This Court thereafter issued orders pursuant to New York Mental Health Law § 33.13(c)(1) directing disclosure of: (1) Petitioner's Office of Mental Health ("OMH") records from March 10, 2010, when the statute of limitations commenced running, to October 23, 2012, the date of filing of the petition (Dkt. No. 33); and (2) his mental health records from the Oneida County Forensic Mental Health Services ("OCFMHS") for mental health services rendered while he was incarcerated in the Oneida County jail prior to his guilty plea.  (Dkt. Nos. 45-46.)  The mental health records have been provided by both the OMH and the OCFMHS.  (Dkt. Nos.  38, 50.)

In addition, Petitioner has filed two declarations particularizing the basis for his equitable tolling claim as directed by the Court (Dkt. Nos. 34, 39, 40), and the parties have made supplemental filings in response to the mental health records and Petitioner's declaration.  (Dkt. Nos. 42, 48-49.)  Respondent's response to the habeas petition, with permission of the Court, is

again limited to the issue of timeliness. (Dkt. No. 34.) For reasons explained below, the Court recommends that Petitioner's petition be dismissed as untimely.

## II.     FACTUAL AND LEGAL BACKGROUND

### A.     The Attack on Sandra Stannard and Petitioner's Indictment and Guilty Plea

The facts describing the October 3, 2005, attack on Sandra Stannard ("Stannard") for which Petitioner entered a guilty plea to burglary in the first degree (Penal Law §140.30(2)), are set forth in the Court's January 19, 2016, Order and Report-Recommendation and will not be repeated herein. (Dkt. No. 23 at 2-3.[1]) After Petitioner's fingerprints were matched to those lifted from windows and a door frame on the outside of Stannard's house, he was indicted on five counts charging him with attempted murder in the second degree (Penal Law §§ 110.00 and 125.25(1)); burglary in the first degree (Penal Law § 140.30(2)); burglary in the first degree (Penal Law § 140.30(3)); assault in the first degree (Penal Law § 120.10(1)); and criminal possession of a weapon in the third degree (Penal Law § 265.02(1)) in connection with the attack on Stannard. (Dkt. No. 14-2 at 8.)

The trial on the charges against Petitioner began on April 2, 2007, in the Oneida County Court, the Hon. Barry M. Donalty, County Court Judge, presiding. (Dkt. No. 14-1 at 1.) On the first day of trial, the jury heard Stannard's testimony and law enforcement officers' testimony regarding fingerprint evidence tying Petitioner to the attack on Stannard. (Dkt. No. 14-1 at 182-238.) The following morning, Petitioner entered a guilty plea to the second count of the indictment against him, burglary in the first degree, pursuant to a plea agreement. *Id*. at 240-45.

---

[1] Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

The plea agreement provided that Petitioner would be sentenced as a second violent felony offender to a seventeen year determinate sentence with five years of post-release supervision. *Id*. at 240. Petitioner executed a waiver of appeal as a part of the agreement. *Id*. at 245.

In his plea colloquy, given under oath, Petitioner was asked, among other things, if he had any physical or mental problems at that time that in any way interfered with his understanding of what they were doing there, and he answered that he did not. (Dkt. No. 14-1 at 242.) Petitioner also stated that no one had threatened him to coerce him into pleading guilty. *Id*. The court explained to Petitioner the rights he was giving up as a result of the plea, including his right to appeal. *Id*. at 243-44. Petitioner then admitted committing the crime of burglary in the first degree by entering Stannard's residence without permission with the intent to commit a crime and causing Stannard physical injury after entering her residence. *Id*. at 245.

Before sentencing on May 15, 2007, Petitioner moved to withdraw his guilty plea. *Id*. at 254. The motion was denied as was Petitioner's request for a hearing on the motion. *Id*. at 254-55. In accordance with the plea agreement, Petitioner was sentenced to a determinate sentence of seventeen years with five years of post-release supervision. *Id.* at 255.

### B.      Petitioner's Direct Appeal

Petitioner pursued a counseled appeal to the Appellate Division Fourth Department from the judgment of conviction on his guilty plea. (Dkt. No. 14-2 at 2-26.)  The issues raised by Petitioner on appeal included: (1) his guilty plea was involuntary and coerced; (2) the County Court's refusal to allow him to withdraw his guilty plea; (3) his appeal waiver should not be enforced since he had not been advised of the court's sentencing options or the maximum term of imprisonment; (4) the County Court's error in denying his motion to dismiss in the interests of

justice without holding a hearing regarding police misconduct in falsifying a DNA report and withholding exculpatory evidence until the eve of trial; (5) denial of effective assistance of counsel as a result of the County Court's refusal to allow defense counsel to cross-examine police witnesses regarding the fabricated DNA report; and (6) an unduly harsh sentence. *Id.* at 3.

The Appellate Division unanimously affirmed the judgment of conviction on October 2, 2009. *People v. Wright*, 885 N.Y.S.2d 794 (4th Dep't 2009).[2] The Court of Appeals denied Petitioner's application for leave to appeal on December 10, 2009. *People v. Wright*, 895 N.Y.S.2d 326 (2009) (Table). Petitioner did not file any state collateral proceedings. (Dkt. No. 12 at 7.)

### C.      Petitioner's Habeas Petition

Petitioner filed his habeas corpus petition on October 23, 2012. (Dkt. No. 1.) It appears that Respondent, construing the petition liberally, has correctly identified the Petitioner's claims as follows: (1) his conviction was based upon legally insufficient evidence, because the victim's description of her attacker bore no resemblance to Petitioner, and there was no fingerprint or other evidence connecting him to the crime; (2) his attorney went along with the prosecutor in "inventing" a crime; (3) his attorney failed to request a *Wade* hearing to determine whether the victim's pretrial identification of Petitioner was improperly suggestive; (4) his attorney and the prosecutor withheld from the court Petitioner's mental health records that would have shown he was not competent to enter a guilty plea; (5) the prosecutor and police conspired to withhold or delay production of certain DNA evidence and evidence of a 911 call and to put false evidence,

---

[2] Details regarding the Fourth Department's findings are set forth in the Court's January 19, 2016, Order and Report-Recommendation. (Dkt. No. 23 at 5-6.)

including false DNA evidence before the grand jury and court; (6) the prosecutor and police, abetted by the court, concealed and falsified evidence, including fingerprint evidence, and knowingly presented false testimony; (7) the trial court improperly denied Petitioner's motion to dismiss without a hearing; and (8) petitioner is "actually" innocent based on the improperly withheld DNA and based on unidentified "newly discovered evidence." (Dkt. Nos. 1; 12.)

**D.      Petitioner's Traverse, Declaration, and Supplemental Memorandum of Law**

1.      Traverse

In his traverse, Petitioner asserted that: (1) he was under psychiatric care during his incarceration in County jail awaiting trial; (2) he was heavily medicated during his time in County jail and as of April 21, 2013, remained under psychiatric care, taking psychotropic medication; (3) his guilty plea was not knowingly, intelligently, and voluntarily made by him on account of his mental illness; (4) there has never been a time after his arrest that he has not been under psychiatric care; (5) his mental illness prevented him from knowing how to prepare his habeas corpus petition; and (6) he had difficulty obtaining help in preparing the petition because his mental illness made him unpopular. (Dkt. No. 15 at 6-8.) Petitioner did not describe the nature of his mental illness or identify medication taken by him in the traverse. (*See generally* Dkt. No. 15.)

2.      July 25, 2016, Declaration

Petitioner filed an unsworn declaration on July 25, 2016, in response to the Court's directive that he file a declaration particularizing the basis for his equitable tolling claim. (Dkt. No. 39.) In his declaration, Petitioner has vigorously professed his innocence in the Stannard

attack. *Id*. at 1. He stated that he was receiving mental health treatment from the time of his arrest through trial and was supposed to have a mental evaluation before starting trial, but did not. *Id*. at 2. According to Petitioner, he had a long time diagnosis of depression, anti-social (sic), and anxiety for which he was given Abilify and Celexa, which caused him to become disoriented so that he could not focus on things for long periods of time, would lose interest, and would do what authority figures suggested he do for his defense. *Id*. He kept refusing medication so he could try to get help because his dealings with mental health had made him an outcast, and so he could focus and get his innocence known by the court. *Id*.

Petitioner contends he was coerced by his attorney and fiancée to plead guilty because serving seventeen years would give him a better chance at freedom than being convicted and sentenced to fifty years to life. *Id*. However, after pleading guilty and returning to jail, Petitioner thought about it and wrote to the Judge and moved to withdraw his guilty plea and for an evidentiary hearing. *Id*. at 2-3.

Petitioner asserts that he was ignored when he sought help with his habeas petition from inmates in the prison library, and the library clerks would not help him. *Id*. at 3. When Petitioner was transferred to Southport Correctional Facility, he was immediately able to find help from someone to write his petition. *Id*.

### 3. July 26, 2016, Declaration

Petitioner filed an additional unsworn declaration, dated July 26, 2016, in which he argued his innocence, asserting that the fingerprint evidence was insufficient to sustain a conviction. (Dkt. No. 40 at 1-2.) Petitioner also argued that the identification evidence by Stannard, based solely on her identifying a photograph (not a photo array), and her testimony on

cross-examination, were insufficient to overcome reasonable doubt as to Petitioner's guilt. *Id*. at 3.

### 4. Supplemental Memorandum of Law

On November 28, 2016, Petitioner filed a supplemental memorandum of law regarding Respondent's brief (Dkt. No. 49) in response to Respondent's second supplemental memorandum of law regarding Petitioner's claim of equitable tolling. (Dkt. No. 48.) The supplemental memorandum is largely repetitive of Petitioner's July 25, 2016, unsworn declaration. (Dkt. No. 39.) Describing the impact of the medication he was taking while in jail and later when he was dealing with his habeas petition, Petitioner wrote that the medication was mind altering and made him docile, which is why he plead guilty under his attorney's advice. (Dkt. No. 49 at 1.) According to Plaintiff, the medication also made him vacuous and left alone. *Id*. When it came time to initiate a habeas corpus proceeding, Petitioner was confused, and when he asked his trial attorney for help, he told Petitioner he had done his job and could not handle the habeas proceeding. *Id*.

## III. ANALYSIS

### A. Timeliness of the Petition

Under the AEDPA, a petitioner must file an application for a writ of habeas corpus within one year of his conviction becoming final. 28 U.S.C. § 2244(d)(1). A conviction becomes final for AEDPA purposes "when [the] time to seek direct review in the United States Supreme Court by writ of certiorari expire[s]," that is ninety days after the final determination by the state court. *Williams v. Artuz,* 237 F.3d 147, 150 (2d Cir. 2001) (citation and internal quotation marks omitted).

The Court of Appeals denied Petitioner's application for leave to appeal from the Appellate Division affirmance of the judgment of conviction on December 10, 2009. *People v. Wright*, 895 N.Y.S. 2d 326 (2009) (Table). Petitioner's conviction became final on March 10, 2010, ninety days after the denial of his motion to appeal to the Court of Appeals, and the one-year limitation period under the AEDPA began to run at that time. Petitioner's last day to file a timely habeas petition was March 10, 2011.[3] Petitioner's habeas petition was filed on October 23, 2012, more than a year and a half after the expiration of the statute of limitations period. (Dkt. No. 1.)

**B.** **Equitable Tolling**

      1.   <u>Legal Standard</u>

The AEDPA statute of limitations is not jurisdictional and is subject to equitable tolling in appropriate cases. *Holland v. Florida*, 560 U.S. 631, 645 (2010). Equitable tolling is available only in the "rare and exceptional circumstances [ ]" in which "extraordinary circumstances have prevented [the petitioner] from filing his petition on time." *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir. 2000) (citation omitted). As the Supreme Court has made clear, "a petitioner is entitled to equitable tolling only if he shows that (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (citation and internal quotation marks omitted); *see also Smith*, 208 F.3d at 17 (petitioner seeking equitable tolling must "act[ ] with reasonable diligence during the period he seeks to toll").

---

[3] As noted above, Petitioner filed no collateral proceedings that would toll the statute of limitations. *See* 28 U.S.C. §2244(d)(2).

Whether a petitioner's circumstances are extraordinary does not focus on "the uniqueness of the petitioner's circumstances, 'but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period.'" *Bolarinwa v. Williams*, 593 F.3d 226, 231-32 (2d Cir. 2010) (quoting *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008)). To be eligible for equitable tolling, a petitioner must demonstrate that the "extraordinary circumstances [were] beyond his control." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011).

A petitioner must also "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000). Where extraordinary circumstances prevented the petitioner from filing his petition "for some length of time," the federal habeas court must still determine whether they "prevented him from filing his petition *on time*." *Id.* (emphasis in original; citation and internal quotation marks omitted). "A court may conclude that such causation is lacking where the identified extraordinary circumstances arose and concluded early within the limitations period." *Harper*, 648 F.3d at 137.

The Second Circuit has held that a petitioner's mental illness can constitute extraordinary circumstances justifying the equitable tolling of the AEDPA statute of limitations. *Bolarinwa*, 593 F.3d at 231. Whether a petitioner's mental illness constitutes extraordinary circumstances warranting equitable tolling is a highly case-specific inquiry. *Id*. at 232 (citation and internal quotation marks omitted); *see also Victorial v. Burge*, 477 F.Supp. 2d 652, 654-55 (S.D.N.Y. 2007) ("The Second Circuit adheres to a case specific approach" and has not developed a "bright

line rule in determining when equitable tolling should apply in cases of mental illness"). The

"burden of demonstrating the appropriateness of equitable tolling for mental illness lies with the

[petitioner]"; in order to satisfy the burden, he "must offer a 'particularized description of how

[his] condition adversely affected [his] capacity to function generally or in relationship to the

pursuit of [his] rights.'" *Bolarinwa*, 593 F.3d at at 231 (quoting *Boos v. Runyon*, 201 F.3d 178,

185 (2d Cir. 2000)). In sum, a habeas petitioner must demonstrate that his "[mental illness]

constituted an 'extraordinary circumstance' severely impairing [his] ability to comply with the

filing deadline, despite [his diligent] efforts to do so." *Id*.

### 2. Petitioner's Equitable Tolling Claim

Petitioner claims that the AEDPA statute of limitations is subject to equitable tolling in

this case because he has had a long time diagnosis of depression, anti-social (sic), and anxiety for

which he was treated with Abilify and Celexa.[4] (Dkt. No. 39 at 2.) He claims to have been

receiving mental health treatment since the time of his arrest, although his submissions are

unclear with regard to specific time periods during which he claims to have taken Abilify and

Celexa and received mental health services. *Id.*

According to Petitioner, the Abilify and Celexa caused him to become disoriented so that

he could not focus on things for a long time. *Id*. at 2. Petitioner contends that while the

medication did not alter his way of thinking, it left him vacuous and alone. (Dkt. No. 49 at 1.)

When it came time to file his habeas petition, he was confused and asked his defense attorney for

---

[4] Abilify is an antidepressant augmentation drug and atypical antipsychotic. *See* http://www.pdr.net/drug-summary/Abilify-aripiprazole-103.8375 (site lasted visited December 14, 2016). Celexa is a selective serotonin reuptake inhibitor antidepressant. *See* http://www.pdr.net/drug-summary/Celexa-citalopram-hydrobromide-1325.8368 (site last visited December 14, 2016).

advice and assistance.  *Id*.  The attorney told him that he could not do his habeas proceeding, so Petitioner turned to the prison law library for help.  *Id*.  The inmates and law library clerks were not willing to assist him because of his affiliation with mental health services.  *Id*.; Dkt. No. 39 at 2-3.  Plaintiff contends that he kept refusing medication so he could try to get help with his legal work because his dealings with mental health had made him an outcast.  (Dkt. No. 39 at 2-3.)

3.    Petitioner's MHU Treatment Records

Petitioner's mental health records provided by OMH begin with a Psychiatric Progress Note from March 31, 2008, well prior to the time the statute of limitations on his habeas proceeding commenced running.  (Dkt. No. 38 at 25.)  At that time, Petitioner's official diagnosis was impulse control disorder.  *Id*.  He was described as having a history of depression for which he was treated at the Central New York Psychiatric Center ("CNYPC") in 1997, and at some point in time on an outpatient basis at the Oneida County jail.  *Id*.  In March 2008, Petitioner was taking Abilify10mg in the morning and 30mg in the evening, and Celexa 40mg once a day.  *Id*.  The medication was being given for depression and anxiety, as well as depressive thinking.  *Id*.  Petitioner was seen on March 31st because he had refused his medication four times, and he agreed to begin taking it again.  *Id*.  Petitioner was found to be well oriented; stable and not decompensating; presenting with good activities of daily living; and feeling less depressed, although still having a dejected affect.  *Id*.  The March 31, 2008, Progress note is the only mental health record indicating that Petitioner was at any time taking Abilify and Celexa.

Chronologically, Petitioner's next Progress Note is from March 23, 2010, nearly two years later, and shortly after the statute of limitations began running.  *Id*. at 28-29.  Petitioner was at that time diagnosed with impulse control disorder and anti-social personality disorder and was

not taking any psychiatric medications.  *Id*. at 28.  The Note indicates that Petitioner's refusal to take medication had led to its discontinuance.  *Id*.  Petitioner was seen by his mental health therapist because he refused to attend a call-out without reason.  *Id*. at 28, 30.  According to the Note, Petitioner had told his previous therapist that he was working on court documents in his spare time.  *Id*. at 28.  Petitioner was found to be alert and oriented to person, place, and time, with a subdued mood and affect, and poor insight and judgment.  *Id*.

An April 16, 2010, Note indicates that Petitioner refused a call-out for no reason after going to the MHU and informed his therapist that he did not want to see him.  *Id*. at 33.  The Note reveals no significant changes from the previous month.  *Id*. at 33-34.  A Diagnosis Record dated April 21, 2010, listed Petitioner's mental health diagnoses as major depression, impulse control disorder, and antisocial personality disorder.  *Id.* at 18.

Petitioner refused call-outs on April 22, 2010, April 30, 2010, and May 12, 2010, giving no reason other than that he did not want to see the therapist  *Id*. at 35.  When the therapist went for a cellside visit on April 30th, Petitioner immediately told him to get away from his cell and informed the therapist that he did not need mental health treatment.  *Id.* at 37-38.  On May 12th, Petitioner threatened to write a complaint for harassment against the therapist if he continued to call him out.  *Id*. at 39.  The psychiatrist reduced Petitioner's mental health service level to Level 4 on May 17, 2010, because he was refusing to see the therapist and had indicated he did not believe he needed MHU services.[5]  *Id*. at 23.  On May 26, 2010, and June 21, 2010, Petitioner

---

[5]  Service designation Level 4 is defined as "[m]ay benefit from brief psychotherapy does not have Serious Mental Illness (SMI)."  (Dkt. No. 38 at 8.)  In April 2010, before Petitioner was reduced to Level 4, he had been at Level 3, which is defined as "[m]ay benefit from brief psychotherapy and psychiatric medication    does not have a Serious Mental Illness."  *Id.* at 3, 22.

was scheduled to be seen by the MHU on inactive status but refused cellside interviews with the therapist. *Id*. at 41-43. The therapist recommended that discharge from the MHU be considered. *Id*. at 44.

A July 2, 2010, Termination Transfer Progress Note reveals that Petitioner indicated he felt he was being harassed by the therapist and did not desire mental health services, but that he would call if he needed help. *Id.* at 45. The Note also revealed that Petitioner had refused his psychiatrist's call-out and refused any further mental health services and was being placed on inactive status but would be seen for screening in the future upon Petitioner's request. *Id*. at 45-46. According to the Note, Petitioner had a spotty record of attendance and refusals, and that he had taken medication for a year and a half at some point before deciding he was gaining no therapeutic effects from it. *Id*. Petitioner's mental health services were terminated on July 2, 2010 and his level was reduced to Level 6.[6] *Id*. at 19, 24. At the time of his placement on inactive status Petitioner was still not taking any psychiatric medication. *Id.* at 46.

Petitioner was still on inactive status when the one-year time limit for bringing a habeas proceeding under the AEDPA expired on March 10, 2011, and he thereafter remained on inactive status until August 22, 2012, when he was again placed on active status. *Id.* at 7. At that time, he was assigned mental health service Level 4. *Id.* On September 6, 2012, Petitioner was assigned mental health service Level 3 and was admitted to services. *Id*. at 8.

An Initial Psychiatric Evaluation Progress Note (Outpatient), dated September 21, 2012, identified Petitioner's chief complaint as being depressed because he had been given a ticket and

---

[6] Level 6 is defined as "[m]ental health assessment completed    does not require mental health services." *Id.* at 24.

14

placed in the Special Housing Unit ("SHU"). *Id*. at 12. Petitioner was described as alert, active, and verbal, no hallucinations or delusions, no symptoms of mania, panic, anxiety, or major depression. *Id*. Petitioner was diagnosed with adjustment disorder, cannabis and alcohol issues, and antisocial personality disorder. *Id*. at 13. The psychiatrist who did the evaluation determined that Petitioner had no indication for psychotropic drugs, directed that supportive therapy be continued, and indicated that Petitioner would be observed for behavioral changes. *Id*. The Evaluation revealed that per Petitioner, he took no psychiatric medications. *Id*.

On September 28, 2012, Petitioner refused to meet with his therapist for a private session, so the therapist met with him cellside. *Id*. at 14. Petitioner informed the therapist he had not felt like coming out for the session. According to the Progress Note, Petitioner "presented with appropriate and effective interaction and eye contact with his therapist . . . .[,] presented as polite and smiled at times during the interaction . . . .[,] did not present with any acute needs, and present[ed] as stable in mood." *Id*.

Petitioner's therapist's Progress Note of October 3, 2012, notes that Petitioner had reported doing legal work. *Id*. at 16. Petitioner spoke of the need to go back on psychiatric medication. *Id*. The Note indicates that Petitioner did not present with any acute needs and presented as stable. *Id*.

4.    Analysis of Petitioner's Equitable Tolling Claim

Petitioner's mental health treatment records belie his argument that he is entitled to an equitable tolling of the statute of limitations under the AEDPA due to mental illness. The statute of limitations commenced running on March 10, 2010. Two weeks later, and for the next three months into the one year limitation period, Petitioner was taking no psychiatric medications and

was largely refusing to attend therapy sessions for his depression, and impulse control and antisocial behavior disorders. (Dkt. No. 33 at 28-43.) In early July 2010, Petitioner indicated that he no longer wanted or needed mental health services. *Id*. at 45. Petitioner's mental health services were terminated on July 2, 2010, his services level was reduced to Level 6 ("[d]oes not require mental health services"), and Petitioner was placed on inactive status. When the statute of limitations expired on March 10, 2011, Petitioner was still on inactive status, taking no psychiatric medication, undergoing no therapy, and presumably still at service Level 6. (*See generally* Dkt. No. 33.)

It was not until September 6, 2012, a year and a half after the time within which to commence his habeas corpus proceeding under the AEDPA had expired, that Petitioner was assigned a mental health services Level 3 and re-admitted to mental health services. *Id*. at 8. Even then, as reflected in a September 21, 2012, Initial Psychiatric Evaluation Progress Note (Outpatient), Petitioner, who claimed to be depressed because he had been placed in SHU, was described as alert, active, verbal, no hallucinations or delusions, no symptoms of mania, panic, anxiety, or major depression. *Id*. at 12. The psychiatrist found that Petitioner, who was taking no psychiatric medications, showed no indication for psychotropic drugs and should continue on supportive therapy. *Id*. at 13.

There is no evidence that Petitioner was taking Abilify or Celexa from March 10, 2010, to October 23, 2012. Therefore, the medication could not, as Petitioner claims, have severely impaired his ability to commence a habeas corpus proceeding in a timely manner. *Id*. at 2. Likewise, Petitioner has presented no evidence, nor do his OMH records show, that his depression, impulse control disorder, or anti-social behavior disorder severely impaired his

ability to comply with the filing deadline, particularly in light of the fact that he was unwilling to accept mental health services for the first three or so months of the one-year statute of limitations and found not to require mental health services for the remainder of the year or a year and a half thereafter.  (Dkt. No 33.)

Evidence of mental illness during the AEDPA's one-year filing period is critical to a viable equitable tolling argument.  *See, e.g., Rios v. Mazzuca*, 78 F. App'x 742, 745 (2d Cir. 2003) (no equitable tolling where petitioner with history of schizophrenia and antisocial personality disorder was unable to show illnesses prevented timely filing of petition); *Victorial*, 477 F.Supp. 2d at 655 (no equitable tolling where petitioner failed to show how bipolar disorder prevented him from filing petition "during the year in which he was to file his petition").   "In order to establish that a habeas claim is supported by equitable tolling, a petitioner must point to evidence    preferably medical    that shows, in detail, mental incapacitation impeding the ability to pursue rights." *Franklin v. New* York, 306 F.R.D. 103, 111 (E.D.N.Y. 2015)[7]; *see also Smith v. Annucci*, No. 13-CV-00454 - JKS, 2014 WL 2215765, at * 3 (N.D.N.Y. May 29, 2014) (equitable tolling not permitted where petitioner's mental health documentation "[does] not portray [petitioner] as being incapable of rational thought or lacking the wherewithal to ascertain what legal steps he needed to take."); *Green v. Sheehan*, No. 12-CV-0665 (MAT), 2014 WL 338832, at * 6 (W.D.N.Y. Jan. 30, 2014) (equitable tolling not permitted where medical records submitted did not show that mental condition was an "exceptional circumstance" and there was no particularized explanation for how petitioner's depression prevented him from pursuing his

---

[7]  The Court will provide Plaintiff with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

legal rights); *Boyd v. United States,* No. 13-CV-5572 (BMC), 2013 WL 6081701, at * 5 (E.D.N.Y. Nov. 19, 2013) (equitable tolling not permitted where medical documentation did not show petitioner was incapacitated in a way that would prevent filing of habeas petition).

The Court finds, based on the evidence before it, that Petitioner has failed to satisfy his burden of demonstrating that his "particular disabilit[ies] constituted an 'extraordinary circumstance' severely impairing [his] ability to comply with the filing deadline." *Bolarinwa*, 593 F.3d at 231. There is no evidence in Petitioner's OMH mental health records covering the period from March 10, 2010, when the one-year time limit commenced running, and March 10, 2011, when it expired, or even thereafter through the October 23, 2012, habeas filing date, showing that Petitioner was "so incapable of rational thought that he could not appreciate his situation, or [that he] lacked the wherewithal to ascertain that he must take legal steps," as a result of mental illness. *Mazzuca*, 78 F. App'x at 744. Moreover, there is no evidence before the Court showing that Petitioner acted with reasonable diligence in attempting to comply with the AEDPA time limitation. *See Bolarinwa*, 593 F.3d at 231; *Valverde*, 224 F.3d at 134.

Petitioner also claims that he is entitled to equitable tolling because his defense attorney would not help him with a habeas proceeding, and other inmates and library clerks would not assist him because of his association with mental health services, and he did not know how to proceed on his own. (Dkt. Nos. 39 at 2-3; 41 at 1.) Courts have found lack of education and lack of assistance of counsel or other assistance in preparing a habeas petition insufficient to warrant equitable tolling. *See, e.g., Smith*, 208 F.3d at 18 (holding that petitioner's pro se status did not merit equitable tolling); *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999) ("We have held that neither a plaintiff's unfamiliarity with the legal process nor his lack of representation during

the applicable filing period merits equitable tolling. . . . It is irrelevant whether the unfamiliarity is due to illiteracy or any other reason."); *Romero v. Ercole*, No. 08-CV-4983 (RRM), 2009 WL 1181260, * 5 (E.D.N.Y. April 30, 2009) ("neither [petitioner's] lack of legal assistance nor his own lack of legal knowledge provides a basis for equitably tolling the statute of limitations"); *Martinez v. Kuhlmann*, No. 99 Civ. 1094 (MBM)(AJP), 1999 WL 1565177, at * 5 (S.D.N.Y. Dec. 3, 1999) ("[D]ifficulty obtaining assistance in legal research from other prisoners or prison staff, is not sufficiently extraordinary to merit equitably tolling the AEDPA's one-year statute of limitations since these are disabilities common to many prisoners.").

In light of the foregoing, the Court finds that Petitioner is not entitled to equitable tolling of the one-year statute of limitations limit under the AEDPA.

### C.      Equitable Exception

#### 1.      Legal Standard

In *McQuiggin v. Perkins*, ___ U.S. ___, 133 S.Ct. 1924, 1931-36 (2013), the Supreme Court held that a credible showing of "actual innocence" under the standard announced in *Schlup v. Delo*, 513 U.S. 298, 329 (1995) could serve as a gateway for gaining review of an otherwise time-barred habeas petition.  A year earlier, in *Rivas v. Fischer*, 687 F.3d 514, 530-43 (2d Cir. 2012), the Second Circuit had concluded that a petitioner who can demonstrate "actual innocence" may be excused from the AEDPA one-year statute of limitations period.[8]  In *Rivas*,

---

[8]  Actual innocence serves only as a gateway to federal habeas review by allowing an otherwise untimely petition to be reviewed on the merits.  *McQuiggin*, 133 S.Ct. at 1928.  It does not, standing alone, warrant relief.  *Id*.  In *Rivas*, the Second Circuit explained that "[i]t is the combination of the two claims    that the petitioner is likely innocent and that his conviction was likely the result of nonharmless constitutional error    that permits a habeas court to review the petition notwithstanding procedural obstacles in order to avoid a miscarriage of justice."  687 F.3d at 540-412

the Second Circuit distinguished a plea to override the AEDPA limitations period based upon actual innocence from a request for equitable tolling, finding the actual innocence issue to be more accurately described as whether an "equitable exception" to § 2244(d)(1) exists in such cases. 687 F.3d at 547, n.42. The Supreme Court, citing *Rivas*, adopted the term "equitable exception" in *McQuiggin*. 133 S.Ct. at 1931.

In order to establish an actual innocence claim, Petitioner must provide "new reliable evidence    whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence    that was not presented at trial." *Schlup*, 513 U.S. at 324. Further, "to invoke the miscarriage of justice exception to AEDPA's statute of limitations, . . . a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of new evidence.'" *McQuiggin*, 133 S.Ct. at 1935 (quoting *Schlup*, 513 U.S. at 327). The claim of innocence must be both "credible" and "compelling." *Rivas*, 687 F.3d at 541 (citing *House v. Bell*, 547 U.S. 518, 521, 538 (2006)). When a Petitioner presents new evidence, "the habeas court must determine whether the new evidence is trustworthy by considering it both on its own merits and, where appropriate, in light of the pre-existing evidence in the record." *Doe v. Menefee*, 391 F.3d 147, 161 (2d Cir. 2004) (quoting *Schlup*, 513 U.S. at 327-28).

2.    Petitioner's Equitable Exception Claim

The petition can be liberally construed to include a claim by Petitioner that he is entitled to an equitable exception from the AEDPA time bar based on actual innocence on the grounds that: (1) mental illness induced him to plead guilty; and (2) no evidence exists to substantiate the charges against him    no physical evidence, DNA, or witness statements. (Dkt. No. 15 at 5.) As

noted above, Petitioner claims he was taking Abilify and Celexa for depression, anti-social (sic), and anxiety, and the medication caused him to become disoriented so that he could not focus for long periods of time.  (Dkt. No. 39 at 2.)  Petitioner described the medication as "mind altering" and claims it made him docile, which is why he plead guilty under his attorney's advice.  (Dkt. No. 48 at 1.)

The Court has reviewed the OCFMHS records on Petitioner's mental health treatment while in the Oneida County jail awaiting trial.[9]  (Dkt. No. 50.)  The records do not identify Abilify or Celexa as medications taken by Petitioner while in the Oneida County jail as he claims.  *Id*.  The records indicate that Petitioner, while on occasion denying any psychiatric problems, *id*. at 9, 12, 17, complained frequently of anxiety and at times of being depressed.  *Id*. at 6-7, 11, 13, 15-16, 19-20.  The records show that the only psychiatric medication taken by Petitioner at the Oneida County jail was Vistaril, which is a piperazine antihistamine that may be used for the symptomatic relief of anxiety and tension associated with psychoneurosis.  *See* http://www.pdr.net/drug-summary/Vistaril-hydroxyzine-pamoate-3067.6085 (last visited on December 14, 2016).  The records reflect that Petitioner complained of, or declined to take, the Vistaril from time to time because it made him jittery, or he did not believe he needed it.  *Id*. at 9, 18, 19.  At other times, Petitioner requested a dosage increase because of anxiety.  *Id*. at 6, 13. The records do not note complaints by Petitioner that the Vistaril caused him to lose focus or become disoriented or docile.  *Id*.

---

[9]  Based upon its review of the OCFMHS records, the Court has determined that those records, which relate to Petitioner's mental health issues prior to his conviction, have no relevance to his equitable tolling argument.  Therefore, they have been considered solely with regard to Petitioner's equitable exception claim.

Petitioner's claim that his mental illness and the psychiatric medication he was taking for it left him disoriented and docile may be relevant to the claim raised in the petition that his guilty plea was involuntary as a result of his mental illness and coerced by defense counsel. (Dkt. No. 1 at 9-10.) However, without new evidence supporting a claim of actual innocence, the gateway to the Court's consideration of whether Petitioner's guilty plea was voluntary remains closed by the time-bar under the AEDPA statute of limitations. Although Petitioner asserts his innocence in the attack on Stannard (Dkt. No. 39 at 1), he has not identified any new, credible evidence of actual innocence to substantiate his position. His assertion that Stannard improperly identified him from a single photograph rather than a photo array, and his claim that there was insufficient evidence to convict him are not new evidence but rather challenges to the sufficiency of the evidence supporting his guilt. (Dkt. No. 40 at 1-2.) *See Schulp*, 513 U.S. at 324.

Based upon the foregoing, the Court finds that Petitioner has failed to make a credible showing of actual innocence based on new evidence which can serve as a gateway for gaining review of his time-barred petition. Therefore, the Court concludes that Petitioner is not entitled to an equitable exception from the bar imposed by the statute of limitations.

## IV.    CONCLUSION

Based upon for foregoing, the Court concludes that Petitioner has failed to demonstrate entitlement to either an equitable tolling of the AEDPA one-year statute of limitations or an equitable exception. Therefore, the Court recommends that Respondent's request for dismissal of the Petitioner's petition on timeliness grounds be granted.

**WHEREFORE**, based upon the foregoing, it is hereby

**RECOMMENDED**, that the petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED** and **DISMISSED** in all respects on the grounds that it is time-barred; and it is further

**RECOMMENDED** that a certificate of appealability not issue with respect to any of the claims set forth in the petition; and it is hereby

**ORDERED**, that the Clerk provide Petitioner a copy of this Order and Report-Recommendation, along with copies of unpublished decisions cited herein accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health & Human Servs.,* 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: December 16, 2016
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

2013 WL 6081701
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Lorenzo BOYD, Petitioner,

v.

UNITED STATES of America, Respondent.

No. 13 Civ. 5572(BMC).
|
Nov. 19, 2013.

**Attorneys and Law Firms**

Lorenzo Boyd, Brooklyn, NY, pro se.

Raymond A. Tierney, United States Attorney's Office, Central Islip, NY, for Respondent.

### *MEMORANDUM DECISION AND ORDER*

COGAN, District Judge.

 **\*1** Petitioner seeks habeas corpus relief under 28 U.S.C. § 2255, vacating his conviction on one count of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), for which I sentenced him to 96 months' custody (below the Guidelines' range of 120 months) and three years' supervised release. His claims are: (1) "ineffective assistance of counsel" because petitioner was "heavily sedated with prescribed psycotropic [sic] drugs which impaired his ability ... to confer with counsel and make appropriate decisions concerning the trial;" and (2) he had a "biased jury pool" because "everyone in the room was of European descent." His petition is time barred and without merit, and his claims are accordingly denied.

### BACKGROUND

The procedural facts surrounding petitioner's conviction after a jury trial are set forth in the Second Circuit's affirmance of the conviction. *United States v. Boyd,* 398 F. App'x 649 (2d Cir.2010), *cert. denied,* ––– U.S. ––––, 131 S.Ct. 2444, 179 L.Ed.2d 1216 (2011). To summarize the relevant points, petitioner was represented before me by three different attorneys. His first attorney moved

to suppress the firearm seized at the time of his arrest, and the Magistrate Judge to whom the motion was referred recommended denial. Petitioner then requested and received a new attorney, and upon receiving advice from that attorney, he pled guilty pursuant to a plea agreement, and after accepting the plea, I denied his motion to suppress as moot. During his plea allocution, he specifically acknowledged under oath that he had possession of a firearm at the time he was arrested. "I was going to the store and I took it out, I was looking for my girlfriend so I took it outside. I went around the corner from where I live at, on my way back that's when they popped me." After his guilty plea, he then became dissatisfied with that attorney, and I appointed someone else. Petitioner then moved to withdraw his guilty plea, which I granted, and the matter went to trial.

At trial, the Government offered testimony from the two police officers who had observed petitioner with a sawed-off rifle protruding from his sleeve. When they made eye contact with him, he immediately started running to the apartment in which he was residing. The officers arrested him just after he reached the apartment and recovered from his person a fully loaded, operable rifle with the serial number obliterated.

Petitioner testified very coherently on his own behalf (I specifically recall his testimony, and thinking that he had a surprisingly "professorial" affect in explaining his version of the facts), asserting that he never had any possession of a weapon, thus suggesting that the police were framing him, or that the weapon that they had recovered belonged to the person in whose residence he was staying. He acknowledged that he was on his way to purchase some crack cocaine at the time he was arrested and had seen the officers on his way out. When he returned with the crack cocaine, he entered the apartment and the police came through the door. He said the police thoroughly searched the apartment and if they found a weapon, it was not his, and he had no knowledge of it. The jury rejected his testimony and found him guilty.

 **\*2** As a result of his prior (and subsequently withdrawn) guilty plea, as well as his testimony at trial, I was aware (as was the jury, as he had testified briefly about it) that petitioner had a history of mental illness, particularly paranoid schizophrenia and depression, for which he was receiving medication after his arrest. He remained in custody after his arrest. Following his conviction

before the jury, this was confirmed by the presentence investigation report, which showed a long history of mental illness. The PSR also noted that since his arrest for the instant crime, petitioner stated that he had "been feeling well and had no suicidality nor depression." The report also noted that his "mood, sleep, and appetite were all normal. The defendant works as an orderly in his unit, and has had no psychotic symptoms/homicidal ideations since his incarceration."

To make sure I had as complete an understanding of petitioner's history and characteristics at sentencing as possible, I *sua sponte* directed a psychological evaluation, which was performed by Dr. Sanford Drob, prior to sentencing. Like petitioner's previous health professionals, Dr. Drob found severe mental impairments, although he thought it might be more likely that petitioner had long-standing Complex Post–Traumatic Stress Disorder than his earlier diagnoses of paranoid schizophrenia. He further found that since petitioner had been taken into custody and was receiving regular medication, his condition had "somewhat improved," both as a result of that medication and "a certain reflectiveness that often comes with age as well as a greater interest and capacity to relate to others." Nevertheless, Dr. Drob's view was that petitioner was in continuing need of monitoring and treatment for mental illness and substance abuse, as well as occupational rehabilitation. Although the severity of petitioner's impairment is apparent from Dr. Drob's report, there was no suggestion that petitioner was incapable of assisting in his own defense.

As I noted at sentencing, one aspect of either petitioner's character or his mental illness or both is his ability to engage in deceptive conduct to manipulate people. I noted his prior conviction for obtaining money by entering homes through the impersonation of a television technician, and that notwithstanding a full confession at the time of his guilty plea allocution, he went on to testify at trial with a completely different story. He did so in a fairly convincing way, even though the jury did not accept his testimony. Indeed, at sentencing, when I asked him to explain the contradiction, he maintained that it was his guilty plea that had been fabricated, not his trial testimony, although he gave me no reason why he would fabricate the story he had told me at his plea allocution.

Based on all of the factors under 18 U.S.C. § 3553(a), I sentenced petitioner as noted above, with drug abuse

treatment recommended while in custody and mental health treatment as a condition of supervised release. Petitioner appealed, raising an issue, among others, relating to his Guidelines calculation, and also contending that I had failed to rule on his motion to suppress. The Court of Appeals rejected both arguments, noting, as to the latter argument, that I had denied the suppression motion as moot once he pled guilty (after the Magistrate Judge had recommended denial on the merits), and that once the guilty plea was withdrawn, it was incumbent on petitioner to seek its reinstatement if he wanted to pursue it, which he had not done. The Circuit also predicted that even if I had ruled on the merits of the suppression motion, "the District Court, after a *de novo* review, would have allowed the evidence to be admitted, finding that the officers had probable cause to arrest Boyd and entered Boyd's apartment without a warrant due to exigent circumstances." *Boyd,* 398 F. App'x at 651.

**\*3** Thirty months after the Supreme Court's denial of petitioner's application for a writ of certiorari (May 16, 2011), he commenced the instant proceeding under 28 U.S.C. § 2255. By Order to Show Cause entered October 18, 2013, I directed him to show why his petition should not be dismissed as time-barred. This Order advised petitioner that he was beyond the one-year time limitation for filing this petition, but that mental illness can constitute the kind of extraordinary circumstances that could toll the statutory period. The Order noted the statement in the petition that "I was taking a number of psychotropic medicines and was unable to understand the charges or to cooperate in my defense. I have been under such medications since April 2007 til 2012." The Order concluded that this statement was insufficient to warrant equitable tolling, but it directed petitioner to submit medical records and a more detailed explanation of when he became disabled and when he stopped being disabled.

Petitioner responded in two ways. First, he submitted a large volume of medical records for his period in custody, both pre-dating and post-dating his sentence, up through February, 2012. [1] Second, petitioner submitted an affidavit, in which he offered some detail of his condition during his time in custody. The affidavit lists the ten medications that he could recall taking during custody, some psychotropic and some others such as ibuprofen, and their effects on him. He asserts that his medication regime "prevented me from filing this proceeding for the

period from October 22, 2011 to the date I filed this petition [October 7, 2013]." He summarizes his mental state during this period as follows:

> The above meds made me alienated and made me drowsy all the time. Except when I was awoken by hunger or my cellmate to eat, I slept. The meds caused me to endure the exact conditions they were supposed to treat. There was no time during this period of heavy medication that I could think. When I was awake, I heard voices and they blotted out all other thoughts. The voices I heard told me things and made suggestions which were not normal. It's very hard to describe but it was so impossible to think about anything, let alone legal complexities, I just shut down mentally to escape the noise in my head. The meds caused me to develop a nervous condition which the prison doctors told me is called Tardive Dyskinesia. [2]

Petitioner noted that he was due to be released on October 23, 2013, and would like to obtain a lawyer specializing in representing those with mental health problems. [3]

### DISCUSSION

### I

"Section 2255 provides that a prisoner sentenced by a federal court may move to have that sentence vacated, set aside or corrected if he or she claims that the court, in sentencing him or her, violated the Constitution or the laws of the United States, improperly exercised jurisdiction, or sentenced him or her beyond the maximum time authorized by law." *Thai v. United States,* 391 F.3d 491, 493 (2d Cir.2004). However, "[b]ecause collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction" through a proceeding under § 2255 than by direct appeal. *Yick Man Mui v. United States,* 614 F.3d 50, 53 (2d Cir.2010) (citations and quotations omitted). The statute thus allows relief "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.' " *United States v. Bokun,* 73 F.3d 8, 12 (2d Cir.1995) (quoting *Hill v.*

*United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)). For each ground for relief, a petition under section 2255 must set forth "specific facts which he is in a position to establish by competent evidence." *LoCascio v. United States,* 395 F.3d 51, 57 (2d Cir.2005).

**\*4** Section 2255(f) sets forth the statute of limitations to file for relief. A movant must file within one year from the latest of four benchmark dates: (1) when the judgment of conviction becomes final; (2) when a government-created impediment to making such a motion is removed; (3) when the right asserted is recognized initially by the Supreme Court, if it has been made available retroactively to cases on collateral review; or (4) when the facts supporting a claim could have been discovered through the exercise of due diligence. *See* 28 U.S.C. § 2255(f).

In certain situations, petitioners are entitled to equitable tolling of the limitations deadline on a Section 2255 petition. *See* *Smith v. McGinnis,* 208 F.3d 13 (2d Cir.2000). A petitioner must satisfy two elements to benefit from equitable tolling. First, he must show that he exercised "reasonable diligence" during the limitations period, and second, that "extraordinary circumstances" precluded him from timely filing. *Hizbullahankhamon v. Walker,* 255 F.3d 65,75 (2d Cir.2001). Mental illness may constitute extraordinary circumstances so as to toll the statute of limitations in some cases. *Bolarinwa v. Williams,* 593 F.3d 226 (2d Cir.2010).

Petitioner's mental status is relevant both to the issue of equitable tolling and the merits of his first claim, although the issues relate to different times periods. To demonstrate grounds for equitable tolling, petitioner must show that after the judgment against him became final on May 16, 2011 (when the Supreme Court denied certiorari) he lacked the mental capacity to file this proceeding during at least eighteen of the thirty months that ensued between the denial of his certiorari petition and the date he commenced this action; that is, there was not an aggregate of twelve months (whether consecutive or not) during the thirty month period during which he had the mental capacity to file this proceeding.

His mental condition also relates to the merits of his first claim—that he was unable to assist in his defense at trial and/or his sentencing. [4] As to that issue, petitioner would have to show mental incapacity during that part of the case.

Because equitable tolling presents a threshold issue, I will consider his mental capacity in these two time periods in reverse chronological order.


**II**

Petitioner's affidavit, quoted above, constitutes *prima facie* evidence that he was too mentally disabled to file this proceeding post-sentencing. However, the affidavit is directly contradicted by all of the medical records during that period, as well as petitioner's own statements.

In his affidavit in response to the Order to Show Cause, he averred that his medications "prevented me from filing this proceeding for the period from October 22, 2011 to the date I filed this petition," *i.e.,* October 7, 2013. It is apparent that even on petitioner's most favorable dates, he had five chargeable months against his one-year period —from the Supreme Court's denial of his petition for a writ of certiorari on May 16, 2011 to his offered date of October 22, 2011.

 **\*5** More importantly, there is no support at all in the medical records that he has submitted for the self-assessment in his affidavit. Contrary to his claim in this proceeding, the most notable aspect from these interviews is that petitioner would frequently refuse to take his medications, not that he became disabled as a result of taking them. Petitioner had regular contact, at least once a month and usually more, with a prison psychologist, medical doctor, or physician's assistant. Much of the product of these interviews is petitioner's self-reporting. The records are too voluminous to discuss all of them in detail, but the virtually all show that he had the capacity to commence this proceeding. Typical of them is an interview conducted on August 13, 2012:

> Reports doing very well, and announced that he has not been taking his medication this month....
>
> Affect was bright and broad. His cognition was goal-directed, sequential, and logical. He was fully oriented. Reports sleep and appetite to be healthy, although he admits not eating as much in an attempt to lose some unwanted weight.... Denies any SI/AI [5] recent or current. Says the last time he heard voices was five years ago and adds that it was at that time that he

was last deeply depressed. And that the only reason he was initially placed on the psychometric medications was after having taken these previously, and that health services continued these upon his arrival as a result.

Similarly, his clinical contact note of June 4, 2012 stated:

> Remains largely compliant with his Prozac, Cogentin, and Zyprexa. Discussed the benefit of increasing compliance to nearly 100%. Affect was normal and broad. While he was initially hoping for a transfer to a low security institution, this was rejected but he insists that he is much happier staying here as he knows the routine and has made many associations within the GP. The crux of his day is said to be working (CCS orderly) and taking GED classes. Sleep and appetite are described to be well within normal ranges. Says the medication regime has been helpful in managing the symptoms of depression and mood-related psychotic sx's. Says he hasn't felt depressed for a very long time, and has not been experiencing AH/ VH [6] at all. He denied any SI/AI.

These same kinds of entries were made all the way through 2011. *See* e.g. Clinical Contact note of March 11, 2011 ("He was fully oriented and engaged in meaningful and fluid conversation regarding his mental health and plans for when he releases. We were able to discuss his involvement in GED classes at this time and his goals to perhaps become involved in VT [vocational training] after that is completed.").

When a habeas corpus petitioner puts in an affidavit that is directly contrary to regularly kept documentary evidence, the Court need not credit the affidavit. *See Florez v. United States,* No. 07–CV–4965, 2009 WL 2228121 at \*9 (E.D.N.Y. July 24, 2009) ("Rather than challenging his conviction, petitioner's work records reinforce the testimonial and documentary evidence against him."); *Percan v. United States,* 294 F.Supp.2d 505 (S.D.N.Y.2003) ( "When considering Percan's unsubstantiated statements on this point, and

Percan's other assertions in his motion that are directly contradicted by the record ... the Court finds not credible Percan's claim."). I have no doubt that petitioner does in fact suffer from serious mental illness. But based on the medical records, nothing prevented petitioner from filing this proceeding for any substantial period within the 30 months after the Supreme Court denied his certiorari petition. If he had any periods of incapacity, they were fleeting. I therefore reject his claim of equitable tolling, and find that the petition is untimely.

### III

 *6 Even if the petition was not time-barred, it would have to be dismissed on the merits.

As to his first claim, I recognize that if petitioner was not competent to assist in his own defense, grounds would exist for habeas corpus relief. "It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri,* 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). "Indeed, 'conviction of an accused person while he is legally incompetent violates due process.' " *United States v. Auen,* 846 F.2d 872, 877 (2d Cir.1988) (quoting *Pate v. Robinson,* 383 U.S. 375, 378, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966)).

However, I was very familiar with petitioner's mental status at the time of sentencing, having directed his examination by Dr. Drob and having reviewed his extensive report. There can be no doubt that notwithstanding his mental illness, petitioner was very capable of assisting with his own defense at trial and at sentencing. His testimony at trial was fully lucid, and that lucidity continued in the manner in which he expressed himself at sentencing. As noted above, there was nothing in Dr. Drob's report to indicate a lack of ability to participate in his defense, and everything I observed belied any such suggestion. "It is well-established that some degree of mental illness cannot be equated with incompetence to stand trial." *United States v. Vamos,* 797 F.2d 1146, 1150 (2d Cir.1986).

It is of some significance that in his affidavit, petitioner states that it was only in "early 2013" that he stopped

taking his medications and "realized that I was innocent and had been unfairly put in prison." But this cannot be right. Petitioner was obviously aware of his alleged innocence while his criminal case was pending before me —after all, it was on the basis of that assertion that he withdrew his guilty plea and testified as to his innocence at trial. He also again asserted his innocence at his sentencing hearing. His misstatement in this regard is consistent with my view expressed at sentencing that one of petitioner's adaptations to his mental illness is the ability to use it to achieve short term goals.

All of the evidence shows that he was competent to proceed with trial and sentencing. Based on his medical records and my observations of him in the long course of his criminal case, it is far more likely that, if he has now stopped his medication as he asserts, his impairment is interfering with his present thinking rather than his thinking when he was before me for trial and sentencing.

### IV

Petitioner's second point is that he had a "biased jury pool" because everyone in the room was of "of European descent." The Sixth Amendment has been interpreted to require that a jury be selected from a representative cross-section of the community. *See Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). This claim would fail for two reasons.

 *7 First, the claim has been waived because petitioner neither raised it during jury selection nor on appeal. *See Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973); *United States v. Tarascio,* 15 F.3d 224 (2d Cir.1993); *Campino v. United States,* 968 F.2d 187 (2d Cir.1992). Where a defendant fails to raise an alleged constitutional violation on direct appeal, he may not raise such a claim on collateral review unless he can show (1) "cause" for his failure to raise the claim on appeal; and (2) actual "prejudice" due to the alleged violation. *See Reed v. Farley,* 512 U.S. 339, 354, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994). The good cause prong requires the movant to show that something "external to the petitioner, something that cannot fairly be attributed to him," resulted in his failure to raise a claim on direct appeal. *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). I have rejected petitioner's contention of mental

incompetence, and he has offered no other basis for a finding of cause.

Second, petitioner offers no evidence showing that the venire was not representative of a cross-section of the community. To the contrary, the transcript undermines his contention, as it shows his contention that the venire was entirely "of European descent" is in all likelihood wrong. Although the names of the panel members are not conclusive as to national origin, considering that the initial panel seated included Sanchez, Perea, Benjaskulluecha, Wu, Adedeji, and Wong, petitioner cannot prevail on his unsupported claim that the venire was "of European descent."

Accordingly, his claim is rejected.

### V

I have concluded that a further hearing is not necessary in this matter for three reasons. First, as noted, I am very familiar with petitioner's underlying criminal case, his demeanor, and his mental condition. *See Puglisi v. United States,* 586 F.3d 209, 214 (2d Cir.2009) ("[W]hen the judge that tried the underlying proceedings also presides over the Section 2255 motion, a less-than-full-fledged evidentiary hearing may permissibly dispose of claims where the credibility assessment would inevitably be adverse to the petitioner."). Second, the documentary evidence that I directed petitioner to file in response to the Order to Show Cause conclusively refutes the claims in his affidavit. *See Chang v. United States,* 250 F.3d 79 (2d Cir.2001) (district court may request documentary evidence in lieu of full hearing). Finally, petitioner's claims are simply too vague and conclusory to require further inquiry. *See Machibroda v. United States,* 368 U.S. 487, 495–96, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962).

### CONCLUSION

The petition for a writ of habeas corpus is denied. A certificate of appealability shall not issue. *See* 28 U.S.C. § 2253(c). Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**\*8 SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 6081701

---

Footnotes

1    These records were received in Chambers. I am hereby directing the Clerk to file them on the docket under seal, finding that petitioner's privacy interests outweigh the qualified right of public access to these documents.

2    Petitioner did not submit complete medical records, and there is no reference in those that he did submit to Tardive Dyskinesia. In any event, it does not appear that this condition is related to petitioner's schizophrenia or PTSD or that it affects his ability to comprehend or assist in his own defense. *See* www.tardivedyskinesia.com (last visited 11/15/2013).

3    The Bureau of Prisons' website shows a scheduled release date of March 26, 2014, but it may be that petitioner is eligible for early release. He appears to reside presently in a residential reentry center.

4    Petitioner refers to this as "ineffective assistance of counsel," but it is clear that that is not what he is talking about.

5    "SI" most likely refers to suicidal ideation. "AI" may mean aggressive ideation, homicidal or otherwise.

6    Auditory hallucinations/visual hallucinations.

**End of Document**                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 338832
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Darnell GREEN, Petitioner,

v.

Michael SHEEHAN, Respondent.

No. 1:12–CV–0665(MAT).
|
Jan. 30, 2014.

**Attorneys and Law Firms**

Darnell Green, Attica, NY, pro se.

Nicholas Timothy Texido, Buffalo, NY, for Respondent.

**DECISION AND ORDER**

MICHAEL A. TELESCA, District Judge.

**I. Introduction**

**\*1** *Pro se* petitioner Darnell Green ("Green" or "Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. 2254 on the basis that he is being held in Respondent's custody in violation of his federal constitutional rights. Green is incarcerated pursuant to a judgment entered against him on February 7, 2007, in New York State Supreme Court (Erie County) following a jury verdict convicting him on one count of Manslaughter in the First Degree (N.Y. Penal Law § 125.20).

**II. Factual Background Procedural History**

On April 12, 2006, in the City of Buffalo, four individuals saw Petitioner charge at his father, Gary Green, and strike him with his hand. Two of the eyewitnesses were Petitioner's brothers. Although none of the eyewitnesses observed a knife in Petitioner's hands, they immediately saw Gary Green fall to the ground and start bleeding. Petitioner admitted to police that a knife found at the scene with Gary Green's blood on the blade belonged to him. The major DNA profile on the knife handle matched Petitioner's DNA profile.

When Petitioner's brother, Carl Green, asked why he had stabbed their father, Petitioner replied, "He got what the

fuck he deserved. Get the fuck out of my face before I stab you." T.806. Petitioner initially told the police that although he had been present at the scene, he did not stab anybody, surmising instead that his father must have cut himself on some glass. T.622–27. When the police told him that he was being charged with murdering his father, Petitioner stated, "I didn't mean to hurt anybody." T.730.

Petitioner was charged with murder in the second degree (N.Y. Penal Law § 125.25(1)). After a jury trial, he was acquitted of murder but found guilty of the lesser included offense of manslaughter in the first degree. He was sentenced to a determinate term of 20 years in prison to be followed by 5 years of post-release supervision.

Petitioner's conviction was affirmed on direct appeal in 2009. He did not file the instant habeas petition until 2012. Respondent answered the petition, asserting that it is untimely and that Petitioner is not entitled to equitable tolling of the statute of limitations. Respondent argues, in the alternative, that all of Petitioner's claims lack merit. Petitioner asserts that his mental health issues and low intelligence quotient ("I.Q.") entitle him to equitable tolling.

For the reasons that follow, the Court finds that the petition is untimely and that Petitioner is not entitled to equitable tolling. Accordingly, the request for a writ of habeas corpus is denied, and the petition is dismissed.

**III. Timeliness of the Petition**

**A. Timeliness Calculation and Statutory Tolling**

Title I of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, § 101, 110 Stat. 1214, 1217 (codified at 28 U.S.C. § 2244), imposes a one-year time limit for filing habeas petitions. See 28 U.S.C. § 2244(d)(1)(A)-(D). The statute of limitations runs from the latest of the following four events:

**\*2** (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). For most petitioners, including Green, Section 2244(d)(1)(A) sets the applicable starting point for the one-year period-i.e., the date on which the conviction became final. *See Burton v. Stewart,* 549 U.S. 147, 156–57, 127 S.Ct. 793, 166 L.Ed.2d 628 (2007).

A conviction is considered "final" "once 'the judgment of conviction [has been] rendered, the availability of appeal exhausted, and the time for petition for *certiorari* ___ elapsed.' " *McKinney v. Artuz,* 326 F.3d 87, 96 (2d Cir.2003) (quoting *Teague v. Lane,* 489 U.S. 288, 295, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (citation and internal quotation marks omitted in original) and citing *Clay v. United States,* 537 U.S. 522, 527, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003) (noting that "finality" has a "long-recognized, clear meaning" in the post-conviction relief context-namely, the time when the United States Supreme Court "affirms a conviction on the merits on direct review or denies a petition for a writ of *certiorari,* or when the time for filing a *certiorari* petition expires")).

On March 20, 2009, the Appellate Division, Fourth Department, of New York State Supreme Court, affirmed the conviction. *People v. Green,* 60 A.D.3d 1320, 875 N.Y.S.2d 390 (4th Dep't 2009). On June 30, 2009, the New York Court of Appeals denied leave to appeal. *People v. Green,* 12 N.Y.3d 915, 884 N.Y.S.2d 696, 912 N.E.2d 1077 (2009). Green thereafter had 90 days, or until September 28, 2009, in which to file a petition seeking a writ of *certiorari* in the United States Supreme Court. *McKinney,* 326 F.3d at 96 (citing SUP. CT. R. 13(1) ("A petition for a writ of *certiorari* seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review."). Because Green did not file a petition for *certiorari* seeking review of the New York state-court decisions in the United States Supreme Court,

his conviction became final on September 28, 2009, 90 days after June 30, 2009, the date of the order denying his application for leave to appeal to the New York Court of Appeals. *See id.* Green accordingly had one year, or until September 28, 2010, to file his federal habeas petition.

**\*3** By operation of the "prison mailbox rule," Green's petition is deemed to have been filed on the date that he signed it. *See Houston v. Lack,* 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (stating that the "prison mailbox rule" applies to *pro se* incarcerated petitioners and provides that a pleading is deemed filed on the day the petitioner hands it over to prison officials for mailing). Here, Green signed his petition on July 2, 2012, so it is deemed to have been filed on that date. Since the limitations period expired on September 28, 2010, the petition is untimely by 643 days (1 year, 9 months, and 4 days).

AEDPA contains a tolling provision which provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2); *see also, e.g., Smith,* 208 F.3d at 16. Here, however, Green did not file any post-conviction or other collateral motions, and therefore he cannot avail himself of any statutory tolling.

**B. Equitable Tolling**
AEDPA's one-year limitation on filing is not jurisdictional and, under certain circumstances, may be equitably tolled. *Holland v. Florida,* 560 U.S. 631, ──, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010); *accord, e.g., Acosta v. Artuz,* 221 F.3d 117, 119, 122 (2d Cir.2000) (citation omitted). "[I]n 'rare and exceptional circumstances' a petitioner may invoke the courts' power to equitably toll the limitations period." *Doe v. Menefee,* 391 F.3d 147, 159 (2d Cir.2004) (internal quotation omitted). This decision is left to the sound discretion of the district court. *Belot v. Burge,* 490 F.3d 201, 206–07 (2d Cir.2007).

The petitioner bears the burden of demonstrating that (1) "extraordinary circumstances prevented him from filing his petition on time," *Smith,* 208 F.3d at 17; and (2) he "acted with reasonable diligence throughout the period he seeks to toll," *id.* Equitable tolling also "requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for

equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Valverde v. Stinson,* 224 F.3d 129, 134 (2d Cir.2000). Whether a petitioner's circumstances are "extraordinary" does not focus on "the uniqueness of the petitioner's circumstances, 'but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period.' " *Bolarinwa v. Williams,* 593 F.3d 226, 231–32 (2d Cir.2010) (quotation omitted).

Green states that he is entitled to equitable tolling because of his "mental deficiency" and "long history of low intelligence", and because he was "unable to read and write at that time". Dkt # 7 at 1. As a result, he states, he was "incompetent with the law" and unable to file within the one-year limitations period. *Id.* Green has submitted educational records from prison (Dkt # 8), showing that his reading was at the 2.6 grade level on August 6, 2007, and that it had improved to the 4.2 grade level by October 5, 2011. Green has not submitted any educational records subsequent to October 2011. In addition, Green has submitted medical records (Dkt # 7) indicating that he was housed in a mental health satellite unit of the New York State Department of Correctional Services and Community Supervision ("DOCCS") from March 30, 2009, until at least April 6, 2009. Green has not submitted any mental health records subsequent to April 2009.

**\*4** The Second Circuit has held that under "appropriate circumstances", a petitioner may "rely on proof of mental illness to justify equitable tolling of the AEDPA's limitation period." *Bolarinwa v. Williams,* 593 F.3d 226, 231 (2d Cir.2010). The "burden of demonstrating the appropriateness of equitable tolling for mental illness lies with the [petitioner]"; in order to carry this burden, he "must offer a 'particularized description of how [his] condition adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights.' " *Id.* (quoting *Boos v. Runyon,* 201 F.3d 178, 185 (2d Cir.2000)). Therefore, a habeas petitioner must demonstrate that his "particular disability constituted an 'extraordinary circumstance' severely impairing [his] ability to comply with the filing deadline, despite [his] diligent efforts to do so." *Id.* As explained below, the documentation submitted by Green does not substantiate his claim that he was suffering from a mental illness or

mental deficiency that severely impaired his ability to comply with the statutory deadline, despite his diligent efforts to comply with that deadline. *See Bolarinwa,* 593 F.3d at 232.

On March 26, 2009, when Green saw his mental health care providers in DOCCS, he "[d]enie[d] any severe depression or anxiety" and denied hallucinations. His speech was organized and spontaneous, and his affect was "bright". *See* Dkt # 7 at 4. [1] On March 30, 2009, however, he reported feeling "helpless" and "hopeless" and was "angry over some legal papers". *See id .* at 6. The "legal papers" are presumably the Appellate Division's order dated March 20, 2009, affirming his conviction. At his March 30th appointment, Green asserted that his brothers had framed him for his father's murder, complained that he had no support from his family or girlfriend, and was upset that he had not seen his child for three years. *Id.*

On March 31, 2009, Green was admitted to an observation unit due to homicidal (but not suicidal) ideation and feelings of despair. Green was mute at first but "quickly" began to talk to his treatment providers, reporting that "he was innocent of his crime and that his case had been 'affirmed' and that he now had nothing." Green "was superficially cooperative"; his speech was within normal limits; he had good eye contact; he denied sleep disturbances; he exhibited appropriate behavior; and his thoughts were organized and relevant. Although his mood and affect were depressed and anxious, he denied hallucinations and displayed no overt signs of psychosis. He was alert and fully oriented, with intact memory. *See* DKt # 7 at 8.

On April 2, 3, and 4, 2009, Green repeatedly expressed that he was upset and distressed over his unsuccessful appeal, stating that he had been unjustly imprisoned. As his statements to his healthcare providers make clear, it is apparent that his increased feelings of depression were caused by his receipt of notice that his conviction had been affirmed. *See, e.g.,* Dkt # 7 at 11.

**\*5** On April 6, 2009, Green was released from the observation unit. *See* Dkt # 7 at 15. During his discharge interview, he stated that it was his daughter's birthday and that the three-year anniversary of his father's memorial was approaching, but he felt the same and that "nothing was going to change" for him. *Id.* Green continued to proclaim his innocence and asserted that many people

knew he was not guilty. Again, Green reported no sleep disturbances, his behavior was appropriate, and his thoughts were organized and relevant. Although his mood and affect were depressed and anxious, he denied hallucinations and displayed no overt signs of psychosis. Green was alert and fully oriented, and his memory was intact. Green's caregivers indicated in their notes that they believed his primary concerns were not mental-health-related; instead, they opined, he was "protesting against the legal system." *Id.* In none of the records did Green report suicidal ideation, and he denied having a history of suicidal behavior.

Green "has produced no documentation showing that during the period of time from his conviction until his deadline for filing a timely habeas petition ..., he was so incapable of rational thought that he could not appreciate his situation, or lacked the wherewithal to ascertain that he must take legal steps." *Rios v. Mazzuca,* 78 F. App'x 742, 744, 2003 WL 22426961, at *3 (2d Cir. Oct.22, 2003). Indeed, the medical records that he has produced show just the opposite-that he was keenly aware of his legal situation, namely, that his conviction had been affirmed on direct appeal. As Respondent notes, becoming depressed as the result of the affirmance of his conviction on direct appeal was actually a quite rational response to that news.

Although medical records show a worsening in his depression after learning of his unsuccessful appeal, they also then show some improvement: Green was discharged from the mental health observation unit about two weeks later. After his discharge from the observation unit in April 2009, documentation of his medical condition ends. The limitations period did not begin until September 2009, and Green has offered no proof of mental incapacity during the period after September 2009, let alone through the approximately three years that elapsed before he filed his habeas petition in July 2012. *See Rios,* 78 F. App'x at 745; *see also Morales v. United States,* 373 F.Supp.2d 367, 373 (S.D.N.Y.2005). Without demonstrating that he was mentally incapacitated during the actual limitations period, Green is unable to establish that his mental condition was causally related to his failure to file his petition on time. *See Valverde,* 224 F.3d at 134 ("If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure

to file is broken, and the extraordinary circumstances therefore did not prevent timely filing.").

**\*6** To the extent that Green relies on his below-average intelligence to support his equitable tolling claim, courts in general found that and similar conditions insufficient to constitute extraordinary circumstances. See *Raspberry v. Garcia,* 448 F.3d 1150, 1154 (9th Cir.2006) ("Raspberry's inability correctly to calculate the limitations period is not an extraordinary circumstance warranting equitable tolling."); *Heath v. Ault,* 334 F. App'x 34, 34 (8th Cir.2009) (*per curiam* ) (finding petitioner who had a learning disability in reading "did not establish the extraordinary circumstances necessary to equitable toll the limitations period"); *Keitt v. City of New York,* 09 CIV. 5663 PKC DF, 2010 WL 3466175, at *9 (S.D.N.Y. Aug.9, 2010) (petitioner's dyslexia and learning disability did not qualify him for equitable tolling); *Laurson v. Leyba,* 507 F.3d 1230, 1232 (10th Cir.2007) (finding dyslexia is not a circumstance that justifies the equitable tolling of the statute of limitations) (citing, *inter alia, Turner v. Johnson,* 177 F.3d 390, 391–92 (5th Cir.1999) (*per curiam* ) (unfamiliarity with the law due to illiteracy does not toll limitations period)); *Marte v. Brown,* No. 09 Civ. 1036(RJS)(KNF), 2010 WL 1644271, at *3 (S.D.N.Y. Apr. 20, 2010) ("Courts have rejected lack of access to legal services, illiteracy, lack of English fluency, and ignorance of the law as extraordinary circumstances that 'effectively prohibit [a] petitioner from pursuing habeas relief.' ") (quoting *Armand v. Strack,* No. 98 Civ. 6650(RDJ), 1999 WL 1667720, at *5 (E.D.N.Y. Feb. 19, 1999) (alteration in original); other citations omitted)); *Ayala v. Fischer,* No. 04 Civ. 3404(LAK), 2004 WL 2435523, at *1 (S.D.N.Y. Nov.2, 2004) ("Ignorance of the law and an inability to read or write do not constitute extraordinary circumstances that would justify equitable tolling.") (citations omitted). Here, Green has not submitted evidence that he was effectively prohibited him from seeking legal redress due to his low I.Q. or difficulties in reading and writing.

Finally, Green's "statement that he is generally unknowledgeable about the governing law or the AEDPA in particular is insufficient to warrant equitable tolling. Such a limitation, under which numerous *pro se* inmate petitioners suffer, does not amount to 'extraordinary circumstances[.]' " *Cannon v. Kuhlmann,* No. 99CIV.10101(DLC), 2000 WL 1277331, at *2 (S.D.N.Y. Sept.7, 2000) (citing *Martinez v. Kuhlmann,* No.

99 Civ. 1094(MBM), 2000 WL 622626, at *3 (S.D.N.Y. May 15, 2000); *Zorilla v. Artuz,* No. 99 Civ. 9249(NRB), 2000 WL 328881 (S.D.N.Y. Mar.29, 2000)).

In sum, Green has not showed that he acted with reasonable diligence throughout the period he wishes to have tolled. The records submitted by Green do not establish that his mental condition was sufficiently "rare" or "exceptional" to constitute "extraordinary circumstances". Moreover, he has not established that he was acting with reasonable diligence throughout the limitations period. Indeed, there are three years (April 2009, to July 2012) for which Green has not submitted any medical or educational records, and he has not otherwise explained how he was acting with reasonable diligence throughout this time or provided a particularized explanation as to how his mental deficiencies or depression prevented him from pursuing his legal rights. Accordingly, Green is not entitled to equitable tolling.

## IV. Conclusion

**\*7** For the foregoing reasons, the petition (Dkt # 1) is dismissed as untimely. No certificate of appealability shall issue because Green has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether th[is] ... [C]ourt was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000); *see also Bethea v. Girdich,* 293 F.3d 577, 577 (2d Cir.2002) (*Slack v. McDaniel* standard applies to request by habeas petitioner, whose petition was dismissed as untimely under AEDPA, for a certificate of appealability).

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 338832

---

Footnotes

1    Page numbers refer to the automatic page-numbering generated by the Court's CM/ECF system.

---

    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2016 Thomson Reuters. No claim to original U.S. Government Works.   5

1999 WL 1565177
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Juan MARTINEZ, Petitioner,
v.
Robert H. KUHLMANN, Respondent.

No. 99 Civ. 1094 MBM AJP.
|
Dec. 3, 1999.

**Attorneys and Law Firms**

Raymond S. Sussman, Hartsdale, NY, for Plaintiff's.

Frances A. Gallagher, the Legal Aid Society, Criminal Appeals Bureau, New York, NY, for Plaintiff's.

Rona Z. Feinberg, Asst. District Attorney, New York, NY, for Defendant's.

Juan Martinez, Sullivan Correctional Facility, Fallsburg, NY, Plaintiff's, pro se.

Susan H. Odessky, Assistant Attorney General, New York, NY, for Defendant's.

Georgia J. Hinde, New York, NY, for Plaintiff's.

*REPORT AND RECOMMENDATION*

PECK, Magistrate J.

MUKASEY, J.

**\*1** Petitioner Juan Martinez seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, from his January 29, 1991 conviction by guilty plea of conspiracy and possession of a controlled substance. Martinez's federal habeas petition, dated December 10, 1998, alleges that the state court erred in imposing consecutive sentences for separate charges based on the same criminal conduct in violation of the Fifth Amendment Double Jeopardy Clause.

For the reasons set forth below, I recommend that the Court dismiss Martinez's petition as barred by the one-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA") because his arguments for equitable tolling are inadequate.

*PRIOR HISTORY*

*Martinez's Guilty Plea and State Court Appeal*
Martinez pleaded guilty and was convicted on January 29, 1991 of criminal possession of a controlled substance in the second degree and conspiracy in the second degree, and sentenced to consecutive sentences of 8–1/3 years to life and 2–2/3 to 8–1/3 years imprisonment. (Pet. ¶¶ 1–5; Pet. Br. at 2–3.) [1] *See People v. Martinez,* 198 A.D.2d 197, 197, 605 N.Y.S.2d 852, 852 (1st Dep't 1993), *appeal denied,* 82 N.Y.2d 927, 610 N.Y.S.2d 179, 632 N.E.2d 489 (1994). In his guilty plea allocution, Martinez admitted that he and two co-defendants possessed 291 kilograms of cocaine. (Pet. Br. at 2, 3.) Martinez also acknowledged at his guilty plea allocution that he understood that he was pleading knowingly and voluntarily and was waiving his right to appeal from his guilty plea and sentence. (Pet. Br. at 2, 3.) *See also People v. Martinez,* 198 A.D.2d at 197, 605 N.Y.S.2d at 852.

Martinez nevertheless appealed his conviction and sentence to the First Department. (*See* Pet. ¶ 7; 11/29/99 Affidavit of Asst. Atty. General Susan H. Odessky, Ex. A: Martinez 1st Dep't Br.) *See also People v. Martinez,* 198 A.D.2d at 197, 605 N.Y.S.2d at 852. The First Department affirmed Martinez's conviction and sentence:

> The defendant after proper colloquy waived his right to appeal. It was voluntary, knowingly and intelligent.

> The sentencing court properly imposed consecutive sentences; the crimes committed here involved separate acts committed with the requisite criminal intent.

*People v. Martinez,* 198 A.D.2d at 197, 605 N.Y.S.2d at 852 (citations omitted). The New York Court of Appeals denied leave to appeal on January 25, 1994. *People v. Martinez,* 82 N.Y.2d 927, 610 N.Y.S.2d 179, 632 N.E.2d 489 (1994).

*Martinez's Federal Court Proceedings*
Martinez's present federal habeas corpus petition is dated December 10, 1998 and was received by the Court's Pro Se Office on December 16, 1998. Martinez's petition

challenges the imposition of consecutive, as opposed to concurrent, sentences on him. (Pet. ¶ 8; Pet. Br. at 4–5.) [2]

By Order dated February 16, 1999, Chief Judge Griesa ordered Martinez to show cause why his petition was not barred by the AEDPA's one-year statute of limitations. (Dkt. No. 3: 2/16/99 Order at 2–3.)

**\*2** Martinez responded that he did not file his habeas petition earlier because he was subject to deportation prior to the expiration of his sentence:

> [O]n or about January 1995, petitioner was notified that INS proceeding was initiated. After several trips to INS hearing the INS Court ordered this petitioner to be deported. On or about in 1996, the Governor began deporting aliens back to their country prior to the expiration of their sentence. Petitioner was immediately thereafter notified that he, along with his co-defendant was to be deported prior to the expiration of their sentence.

> The filing of a habeas corpus would not have served this petitioner at the time any benefit in light of being granted the status of deportation, and the fact that the petitioner negotiated a plea.

> After petitioner was granted status for deportation, the Governor at the eleventh hour clandestinely rescinded all deportation orders. The petitioner immediately filed a habeas corpus in the District Court challenging the failure to execute the deportation order.

(Dkt. No. 4: 4/16/99 Martinez Aff. at p. 2.) Martinez also alleged that he "is a Spanish-speaking prisoner who [had] difficulty at locating prisoners to assist [him] in legal matters" and that the prison "is not as accommodating in providing any assistance." (*Id.* at p. 3.)

The Court has reviewed Martinez's challenge to the INS in the Eastern District of New York, referred to in his affidavit. On or about January 12, 1998, Martinez filed a document entitled "Motion to Issue Mandamus Under 28 U.S.C. § 1361 to the INS for Petitioner's Deportation ..." (E.D.N.Y. Dkt. No. 1 in No. 98 CV 0489.) The Motion sought to require the INS to deport Martinez as soon as possible to his country of origin, Colombia. (*Id.* at p. 2.) By Order dated February 4, 1998, Judge Gleeson dismissed Martinez's petition as frivolous, holding that "[i]ncarcerated aliens may not seek

mandamus relief to compel the INS to hold immediate deportation hearings." (E.D.N.Y. Dkt. No. 3 in No. 98 CV 0489.) The Second Circuit dismissed Martinez's appeal "as so indisputably lacking in merit as to be frivolous within the meaning of 28 U.S.C. § 1915(e)." (E.D.N.Y. Dkt. No. 6 in 98 CV 0489: 4/16/98 2d Cir. Opinion & Mandate.)

*ANALYSIS*

On April 24, 1996, President Clinton signed into law the AEDPA. The AEDPA instituted a one-year limitations period for habeas corpus applications filed after April 24, 1996.

> (d)(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;....

28 U.S.C. § 2244(d)(1)(A).

Because Martinez's conviction became final in 1994, before the April 24, 1996 enactment of the AEDPA, he had a full year from April 24, 1996, *i.e.,* until April 24, 1997, to file his habeas petition. *See, e.g., Ross v. Artuz,* 150 F.3d 97, 98, 103 (2d Cir.1998). His petition, however, was not filed until December 1998, and thus is time barred unless any tolling were to apply.

**\*3** Martinez's April 16, 1999 Affidavit raises issues as to whether the AEDPA's one-year time limit can be equitably tolled for any reason and, if so, whether it should be tolled here because of: (a) the fact that Martinez is Spanish-speaking, (b) Martinez's difficulty in locating prisoners to assist him, (c) the pendency of deportation procedures, or (d) his E.D.N.Y. mandamus petition against the INS. For the reasons explained below, the Court holds that the AEDPA one-year time limit can be equitably tolled, but that Martinez is not entitled to equitable tolling here, and thus his petition should be dismissed as untimely.

## I. *THE AEDPA'S ONE–YEAR STATUTE OF LIMITATIONS MAY BE EQUITABLY TOLLED*

As a general proposition, a time limitations period that is analogous to a statute of limitations is subject to equitable tolling, whereas a time bar which stands as a jurisdictional prerequisite to filing a suit in federal court is not. *See, e.g., Irwin v. Department of Veteran Affairs,* 498 U.S. 89, 95, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1991); *Zipes v. Trans World Airlines, Inc. .,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982); *Carlyle Towers Condominium Ass'n, Inc. v. Federal Deposit Ins. Corp.,* 170 F.3d 301, 306–10 (2d Cir.1999); *In re Benedict,* 90 F.3d 50, 53–54 (2d Cir.1996); *New York v. Sullivan,* 906 F.2d 910, 917 (2d Cir.1990); *Johnson v. AL Tech Specialties Steel Corp.,* 731 F.2d 143, 146 (2d Cir.1984); *Torres v. Miller,* 99 Civ. 0580, 1999 WL 714349 at *5 (S.D.N.Y. Aug. 27, 1999) (Mukasey, D.J. & Peck, M.J.); *Raynor v. Dufrain,* 28 F.Supp.2d 896, 900 (S.D.N.Y.1998). To determine whether a statutory time period is a jurisdictional requirement or a limitations period subject to equitable tolling, a court must look to "[t]he structure of [the statute], the congressional policy underlying it, and the reasoning of [precedent] cases." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. at 393, 102 S.Ct. at 1132; *accord, e.g., Carlyle Towers Condominium Ass'n, Inc. v. Federal Deposit Ins. Corp.,* 170 F.3d at 306 (quoting *Zipes* ); *Torres v. Miller,* 1999 WL 714349 at *5.

The Second Circuit has yet to determine whether the AEDPA's one-year limitations period may be equitably tolled. [3] The vast majority of courts, including all of the Courts of Appeals (the Third, Fifth, Seventh, Eighth, Ninth, Tenth and Eleventh Circuits), that have addressed the issue have held that the AEDPA's one-year time period is only a limitations period, analogous to a statute of limitations, rather than a jurisdictional bar, and thus subject to equitable tolling. These courts have found that the language, legislative history and purpose of the AEDPA, along with the structure of the habeas corpus statute (namely, that the one-year limitations period does not appear in § 2241, the provision which confers habeas jurisdiction to the federal courts) and prior precedent of the Supreme Court, compel this conclusion. *See, e .g., Jones v. Morton,* No. 98–5230, 1999 WL 970797 at *5 (3d Cir. Oct. 25, 1999) ("the one-year [AEDPA] deadline is not jurisdictional and therefore the judge made doctrine of equitable tolling is available, in principal at least"); *Taliani v. Chrans,* 189 F.3d 597, 597–

98 (7th Cir.1999); *Sandvik v. United States,* 177 F.3d 1269, 1271 (11th Cir.1999) (finding that the analogous one-year limitation under § 2255 is "garden-variety statute of limitations, and not a jurisdictional bar that would escape equitable tolling" based on language of statute, shared "legislative history" with § 2244 which "makes clear that both statutes were intended to be ordinary statutes of limitation and not jurisdictional bars," and limitations section is "divorced from the portion of the statute granting the district court authority to conduct post-conviction review"); *Moore v. United States,* 173 F.3d 1131, 1134 (8th Cir.1999) ( "Congress's intent, as reflected in the statute's language, purpose, and legislative history" shows that "the time limit was intended to be a period of limitations, subject to equitable tolling, rather than a jurisdictional bar."); *Davis v. Johnson,* 158 F.3d 806, 811 (5th Cir.1998) ("The Supreme Court has held that limitations periods with even more limiting language than the AEDPA provision could be equitably tolled ... [and] AEDPA's statutory language and construction clearly evinces a congressional intent to impose a one-year statute of limitations for the filing of federal habeas claims by state prisoners.... As such, in rare and exceptional circumstances, it can be equitably tolled."), *cert. denied,* 526 U.S. 1074, 119 S.Ct. 1474, 143 L.Ed.2d 558 (1999); *Miller v. New Jersey State Dep't of Corrections,* 145 F.3d 616, 618–19 (3d Cir.1998) (the structure of the habeas corpus statute and the "language[,] ... legislative history ... [and] statutory purpose of AEDPA" leads to the conclusion "that Congress intended the one-year period of limitation to function as a statute of limitations, and thus be subject to equitable tolling" in extraordinary cases); *Miller v. Marr,* 141 F.3d 976, 978 (10th Cir.) ("It must be remembered that § 2244(d) is not jurisdictional and as a limitation may be subject to equitable tolling"), *cert. denied,* 525 U.S. 891, 119 S.Ct. 210, 142 L.Ed.2d 173 (1998); *Calderon v. United States Dist. Court,* 128 F.3d 1283, 1288–89 (9th Cir.1997) ("[B]oth the Supreme Court and this court have repeatedly held that timing provisions even more unyieldingly phrased than AEDPA's are statutes of limitations subject to tolling."), *vacated on other grounds,* 163 F.3d 530 (9th Cir.1998); *Torres v. Miller,* 1999 WL 714349 at *5–6; *Rhodes v. Senkowski,* 98 Civ. 2221, slip op. at 8–10 (S.D.N.Y. April 23, 1999) (Peck, M.J.); *McDade v. Brigano,* No. C–3–98–514, 1999 WL 126428 at *2 (S.D.Ohio March 8, 1999) ("The language and legislative history of the AEDPA establish that § 2244(d) was intended as a limitations period and not a jurisdictional bar ... [and thus] the AEDPA limitations

period is subject to equitable tolling."); *Raynor v. Dufrain,* 28 F.Supp.2d at 900 ("because the [AEDPA] statute of limitations is not a jurisdictional bar, a court may choose to afford a petitioner equitable tolling ... [but] only in 'extraordinary circumstances' "); *Fadayiro v. United States,* 30 F.Supp.2d 772, 779, (D.N.J.1998) ("The limitations period in the AEDPA has been interpreted as a statute of limitations which is amenable to equitable tolling, rather than a jurisdictional bar which precludes equitable modification."). [4]

**\*4** As I previously concluded in *Torres v. Miller,* "[t]his Court agrees with the reasoning and the conclusions reached by virtually every court that has considered this issue, and holds that the AEDPA's one-year limitations period is subject to equitable tolling in appropriate circumstances." *Torres v. Miller,* 1999 WL 714349 at *6; *accord, Rhodes v. Senkowski,* slip op. 8.

However, " '[e]quitable tolling will not be available in most cases, as extensions of time will only be granted if "extraordinary circumstances" beyond a prisoner's control make it impossible to file a petition on time." ' *Torres v. Miller,* 1999 WL 714349 at *6 (quoting *Calderon v. United States Dist. Court,* 128 F.3d 1288); *accord, e.g., Jones v. Morton,* 195 F.3d 153, 1999 WL 970797 at *5, *Ott v. Johnson,* 192 F.3d 510, 513–14 (5th Cir.1999); *Miles v. Prunty,* 187 F.3d 1104, 1107 (9th Cir.1999) ("When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the [AEDPA] statute of limitations may be appropriate."); *Sandvik v. United States,* 177 F.3d 1269, 1271 (11th Cir.1999) ("Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence."); *Paige v. United States,* 171 F.3d 559, 561 (8th Cir.1999); *Balagula v. United States,* No. CV 99–3572, 1999 WL 1037870 at *4 (E.D.N.Y. Nov. 10, 1999); *Sorce v. Artuz,* No. CV 99–0608, 1999 WL 1037873 at *7 (E.D.N.Y. Nov. 10, 1999); *Warren v. United States,* No. CR–1–96–99, 1999 WL 993239 at *2 & nn.3–4 (S.D.Ohio Oct. 29, 1999); *United States v. Griffin,* 58 F.Supp.2d 863, 866–69 (N.D.Ill. June 8, 1999); *McDade v. Brigano,* 1999 WL 126428 at *2; *Chavez v. Mueller,* No. C. 98–3070, 1999 WL 115431 at *2 (N.D.Cal. March 4, 1999); *Eisermann v. Penarosa,* 33 F.Supp.2d at 1273; *Raynor v. Dufrain,* 28

F.Supp.2d at 900; *United States v. Espinoza–Godinez,* 11 F.Supp.2d 1210, 1214 (D.Or.1998); *Henderson v. Johnson,* 1 F.Supp.2d 650 at 653–54 (N.D.Tex. April 16, 1998) (also adopting a list of seven "nonexclusive factors to assist in deciding whether a prisoner has met the high tolling standard"); *United States v. Muldrow,* No.Crim. A. 98–20063, 1998 WL 351574 at *2 (D. Kan. June 16, 1998). [5]

The burden is on the petitioner—here, Martinez—to make such a showing, and federal courts are to " 'take seriously Congress's desire to accelerate the federal habeas process, and will only authorize extensions when this high hurdle is surmounted." ' *Torres v. Miller,* 1999 WL 714349 at *6 (quoting *Calderon v. United States Dist. Court,* 128 F.3d at 1289); *accord, e.g., Balagula v. United States,* 1999 WL 1037870 at *4; *Sorce v. Artuz,* 1999 WL 1037873 at *7; *Warren v. United States,* WL 993239 at *2 & n.4; *see, e.g., Fisher v. Johnson,* 174 F.3d 710, 713 & nn.10–11 (5th Cir.1999); *McDade v. Brigano,* 1999 WL 126428 at *2; *Eisermann v. Penarosa,* 33 F.Supp.2d at 1273; *see also, e.g., Braham v. State Ins. Fund,* 97 Civ. 7121, 1999 WL 14011 at *3 (S.D.N.Y. Jan. 14, 1999) (Cote, D.J.) ("A [Title VII] plaintiff seeking to toll the statute of limitations on equitable grounds such as illness bears the burden to show that the limitations period should be extended.") (citing *Hedgepeth v. Runyon,* 96 Civ. 1161, 1997 WL 759438 at *4 (S.D.N.Y. Dec. 10, 1997) (citing *Bayer v. United States Dep't of Treasury,* 956 F.2d 330, 333 (D.C.Cir.1992))).

## II. *MARTINEZ IS NOT ENTITLED TO EQUITABLE TOLLING*

**\*5** The Court liberally construes Martinez's April 16, 1999 affidavit as raising four possible bases for equitable tolling the AEDPA's one-year limitations period: (1) that Martinez is a Spanish-speaking prisoner (Dkt. No. 4: 4/16/99 Martinez Aff. at p. 3); (2) that he had difficulty finding other prisoners to assist him (*id.*); (3) that he expected to be deported and so a federal habeas petition would not have benefitted him (*id.* at p. 2); and (4) the pendency of Martinez's petition in the Eastern District of New York to compel the INS to deport him (*id.* at pp. 2–3).

### A. *Lack of English–Language Proficiency and Lack of Aid in Legal Research Are Not*

*Sufficient Grounds to Equitably Toll the AEDPA's One–Year Statute of Limitations*

An inability to speak, read or write English, alone or in combination with difficulty obtaining assistance in legal research from other prisoners or prison staff, is not sufficiently extraordinary to merit equitably tolling the AEDPA's one-year statute of limitations, since these are disabilities common to many prisoners. *See, e.g., Silvestre v. United States,* 55 F.Supp.2d 266, 268 (S.D.N.Y.1999) ("difficulties with English" and "inability to find a person to assist [petitioner] in preparing the petition" insufficient to toll "the *Ross* one year grace period," where "there is no absolute right to assistance of counsel in the preparation of a habeas petition" and "difficulty with English is not coterminous with an inability to understand English"); *United States v. Teshima-limenez,* No. CRIM. 97–087, 1999 WL 600326 at *2 (E.D.La. Aug. 5, 1999) ("lack of legal research material and assistance" and "little English spoken" in petitioner's prison not " 'rare and exceptional circumstances' " to justify equitable tolling); *Ciria v. Cambra,* No. C 98–1021, 1998 WL 823026 at *3 (N.D.Cal. Nov. 10, 1998) (no toll where prison law library contained only outdated materials and petitioner only had a "limited command of the English language"); *Nguyen v. Merrau,* No. C 98–2038, 1998 WL 556628 at *2 (N.D.Cal. Aug. 24, 1998) (equitable tolling not justified based on "lack of fluency in the English language and [petitioner's] alleged inability to find a jailhouse lawyer"); *Santana v. Kuhlmann,* 97 Civ. 3882, 1998 WL 182433 at *2 (S.D.N.Y. April 17, 1998) ("lack of access to bilingual paralegals" not sufficient to equitably toll statute of limitations, despite the Court's recognition of "the difficulties faced by pro se litigants"); *United States v. Maldanado,* 97 Civ. 4088, 1997 WL 360932 at *3 (E.D. Pa. June 26, 1997) (difficulty with English not extraordinary circumstance necessary to warrant equitable tolling of AEDPA statute of limitations); *see also, e.g., Bradley v. Poppel,* No. 99–6205, 1999 WL 992981 at *2 (10th Cir. Nov. 2, 1999) (ignorance of the law and inadequate law library facilities insufficient to create an equitable toll); *Gable v. Maxwell,* No. 99–5061, 185 F.3d 874 (table), 1999 WL 454366 at *2 (10th Cir. July 6, 1999) (same); *Fisher v. Johnson,* 174 F.3d 710, 714 (5th Cir.1999) (non-receipt of AEDPA statutory text by prison law library until 43 days after AEDPA's enactment insufficient for equitable tolling); *Quate v. Hargett,* No. 98–6366, 176 F.3d 489 (table), 1999 WL 288908 at *3

(10th Cir. May 10, 1999) (same); *Miller v. Marr,* 141 F.3d 976, 978 (10th Cir.1998) (limited library access insufficient to establish "extraordinary circumstances"); *Armand v. Strack,* 98 Civ 6650, 1999 WL 167720 at *4 (E.D.N.Y. Feb. 19, 1999) ("petitioner's alleged inability to receive 'full assistance' from the [prison] library staff" did not represent " 'extraordinary' or 'rare and exceptional' circumstances, making it 'impossible to file his petition' "); *Harrison v. Galaza,* No. C 98–3371, 1999 WL 58594 at *3 (N.D.Cal. Feb. 4, 1999) ("a lack of knowledge of the law is not sufficient to constitute extraordinary circumstances"); *Eisermann v. Penarosa,* 33 F.Supp.2d 1269, 1273 (D.Haw.1999) ("Petitioner's alleged lack of legal expertise does not excuse his delay."); *Atkins v. Harris,* No. C 98–3188, 1999 WL 13719 at *2 (N.D.Cal. Jan. 7, 1999) ("lockdowns, restricted library access and transfers do not constitute extraordinary circumstances sufficient to equitably toll the [AEDPA] statute of limitations. Prisoners familiar with the routine restrictions of prison life must take such matters into account when calculating when to file a federal [habeas] petition.... Petitioner's alleged lack of legal sophistication also does not excuse the delay."); *James v. Barkley,* 98 Civ. 4383, 1998 WL 729740 at *1 (S.D.N.Y. Oct. 16, 1998) (petitioner's claim of "no way of knowing of the new statute [the AEDPA]" not sufficient to toll the statute of limitations); *Fennel v. Artuz,* 14 F.Supp.2d 374, 377 (S.D.N.Y.1998) (Preska, D.J. & Peck, M.J.) (equitable tolling based on excuses common among prisoners, such as lack of education and lack of familiarity with legal research, would entirely undermine AEDPA statute of limitations); *Hunter v. Kuhlmann,* 97 Civ. 4692, 1998 WL 182441 at *1–2 (S.D.N.Y. April 17, 1998) (petitioner's inability to secure legal assistance insufficient to warrant equitable toll, despite recognition of "the difficulties faced by pro se litigants"); *Fadayiro v. United States,* 30 F.Supp.2d 772, 778 (D.N.J.1998) ("Ignorance of the law does not justify equitable tolling of a statute of limitations."); *Henderson v. Johnson,* 1 F.Supp.2d 650, 656 (N.D.Tex.1998) (claims that petitioner "did not have professional legal assistance [and] 'did not know what to do' ... are far from the extraordinary circumstances required to toll the statute"); *Brown v. Superintendent, Elmira correction Facility,* 97 Civ. 3303, 1998 WL 75686 at *4 (S.D.N.Y. Feb. 23, 1998) ("a self-serving statement that the litigant is ignorant of the law is not grounds for equitable tolling of a statute of limitations"); *United States v. Van Poyck,* 980 F.Supp.

1108, 1111 (C.D.Cal.1997) (petitioner's assertion that "he has been unable to access the prison's purportedly small law library for an unspecified number of days" insufficient to equitably toll limitations period).

B. *Martinez's Expectation of Deportation Does Not Equitably Toll the AEDPA's One–Year Limitation Period*
**\*6** Martinez asserts that the "filing of a habeas corpus would not have served ... any benefit in light of being granted the status of deportation." (Dkt. No. 4: 4/16/99 Martinez Aff. at p. 2.) Based on the Court's research, the novel question of whether expectation of, and reliance on, deportation can equitably toll the AEDPA's one-year limitations period, has not been addressed in any other case.

The Court begins its inquiry by again noting the "high standard necessary to justify an equitable tolling of the AEDPA's one-year limitations period." *Torres v. Miller,* 99 Civ. 0580, 1999 WL 714349 at *8 (S.D.N.Y. Aug. 27, 1999) (Mukasey, D.J. & Peck, M.J .); *accord, e.g., Rhodes v. Senkowski,* 98 Civ. 2221, slip op. at 15 (S.D.N.Y. April 23, 1999) (Peck, M.J.). Meeting that standard requires Martinez to demonstrate " 'extraordinary' or 'rare and exceptional' circumstances, making it 'impossible to file his petition on time' "; in other words, equitable tolling is only "warranted when some event effectively prohibits the petitioner from pursuing habeas." *Raynor v. Dufrain,* 28 F.Supp.2d 896, 900 (S.D.N.Y. Dec.11, 1998); *see also, e.g., Torres v. Miller,* 1999 WL 714349 at *6 (" '[E]quitable tolling will not be available in most cases, as extensions of time will only be granted if "extraordinary circumstances" beyond a prisoner's control make it impossible to file a petition on time." '; *see also* cases cited at pages 9–10 above. [6]

Martinez has failed to carry his burden of showing extraordinary circumstances that made it impossible for him to file a federal habeas petition. The fact that the government intended to deport Martinez before the conclusion of his state sentence in no way *prevented* Martinez from filing for federal habeas relief. [7] Martinez certainly could have pursued habeas relief while awaiting deportation. A successful federal habeas petition would have lead to Martinez's earlier release from prison, at which point he either would have been deported or he would have been able to voluntarily return to Colombia, if that truly were his goal. Nothing prevented Martinez from

seeking federal habeas relief. Martinez made a strategic decision not to bother filing a federal habeas petition. Having chosen not to timely seek habeas relief, Martinez is not entitled to equitable tolling for the time during which Martinez was hoping for or expecting deportation.

C. *The Court Need Not Determine if Martinez Would Be Entitled to Tolling for the Period His Writ of Mandamus was Pending in the Eastern District of New York, Because His Petition Still Would Be Untimely*
The Court need not determine whether the time Martinez's petition for a writ of mandamus was pending in the United States District Court for the Eastern District of New York would toll the AEDPA's one-year limitation period. Because Martinez is not entitled to any other toll (for the reasons discussed above), Martinez was required to bring his habeas petition by April 24, 1997. *See, e.g., Ross v. Artuz,* 150 F.3d 97, 98, 103 (2d Cir.1998). Martinez's Eastern District petition for a writ of mandamus was not filed until January 1998 (*see* E.D.N.Y. Dkt. No. 1 in 98 CV 0489), some eight months after expiration of the one-year limitation period. The Court therefore need not determine here whether a federal habeas petition (or request for other federal relief) can serve to toll the AEDPA's one-year limitation period.

## CONCLUSION

**\*7** For the reasons set forth above, the Court should dismiss Martinez's habeas petition as untimely under the AEDPA's one-year statute of limitations.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Michael B. Mukasey, 500 Pearl Street, Room 2240, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Mukasey. Failure to file objections will result in a waiver

of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health and Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

**All Citations**

Not Reported in F.Supp.2d, 1999 WL 1565177

Footnotes

1   Martinez's habeas petition was submitted in two parts, and the Court refers herein to the first part as the petition and the second part as the brief.

2   Martinez also sought appointment of counsel. Because the petition is clearly time-barred, the Court does not appoint counsel for Martinez.

3   The Court notes that, although the Second Circuit has not yet addressed this issue, that court has referred to the one-year limitations period as a "statute of limitations." *Ross v. Artuz,* 150 F.3d 97, 98 (2d Cir.1998) ("Effective April 24, 1996, the [AEDPA] introduced for the first time a statute of limitations with respect to the filing of petitions for writs of habeas corpus...."). See *Torres v. Miller,* 1999 WL 714349 at *5 n.5.

4   *See also, e.g., United States v. Griffin,* 58 F.Supp.2d 863, 869 (N.D.Ill.1999); *Triggs v. Cain,* No. Civ. A. 97–2430, 1999 WL 127249 at *1 (E.D.La. March 8, 1999); *Chavez v. Mueller,* No. C 98–3070, 1999 WL 115431 at *2 (N.D.Cal. March 4, 1999); *Eisermann v. Penarosa,* 33 F.Supp.2d 1269, 1273 (D.Haw.1999); *Sperling v. White,* 30 F.Supp.2d 1246, 1254 (C.D.Cal.1998); *Stang v. Smith,* 23 F.Supp.2d 972, 973 (E.D.Wisc.1998); *Hernandez v. United States,* No. Civ. A. 94–60, 1998 WL 552942 at *6 (D.Del. Aug. 13, 1998); *United States v. Espinoza–Godinez,* 11 F.Supp.2d 1210, 1213 (D.Or.1998); *Thomas v. Straub,* 10 F.Supp.2d 834, 835–36 (E.D.Mich.1998); *United States v. Muldrow,* No.Crim. A. 98–20063, 1998 WL 351574 at *2 (D. Kan. June 16, 1998); *Henderson v. Johnson,* 1 F.Supp.2d 650, 653–54 (N.D.Tex.1998); *Baskin v. United States,* 998 F.Supp. 188, 189 (D.Conn.1998); *Parker v. Bowersox,* 975 F.Supp. 1251, 1252 (W.D.Mo.1997); *but see United States v. Eubanks,* 92 Cr. 392, 1997 WL 115647 at *1 (S.D.N.Y. March 14, 1997) (dicta: "The AEDPA provision appears to state a statute of limitations which cannot be waived or modified by the Court.").

5   *See also, e.g., Davis v. Johnson,* 158 F.3d 806, 811 (5th Cir.1998) ("in rare and exceptional circumstances, [AEDPA's one year limitations period] can be equitably tolled"); *Miller v. New Jersey State Dep't of Corrections,* 145 F.3d 616, 618 (3rd Cir.1998) ("equitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair"; "[g]enerally, this will occur when the petitioner has 'in some extraordinary way ... been prevented from asserting his or her rights' "); *Fadayiro v. United States,* 30 F.Supp.2d 772, 779 (D.N.J. Nov.12, 1998) ("Equitable tolling of the limitations period ... is warranted in limited circumstances."); *Hernandez v. United States,* 1998 WL 552942 at *6 (D. Del. Aug 13, 1998); *Thomas v. Straub,* 10 F.Supp.2d 834, 835–36 (E.D.Mich. June 24, 1998).

6   The developing AEDPA case law as to equitable tolling is consistent with the general standard for equitable tolling of statutes of limitations in this jurisdiction, which looks to "extraordinary factors" beyond the plaintiff's control that prevented exercising plaintiff's right. *See, e.g., Cerbone v. Int'l Ladies' Garment Workers' Union,* 768 F.2d 45, 48 (2d Cir.1985); *Miller v. Int'l Tel. & Tel. Corp.,* 755 F.2d 20, 24 (2d Cir.) (petitioner must have been "prevented in some extraordinary way from exercising his rights"), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985); *Lloret v. Lockwood Greene Eng'rs, Inc.,* 97 Civ. 5750, 1998 WL 142326 at *2 (S.D.N.Y. March 27, 1998) (Sotomayor, D.J.).

7   Martinez has not presented this Court with any evidence that the INS did, in fact, inform him that he would be deported before the conclusion of his sentence, or when the INS so informed him. The Court assumes, for purposes of this opinion, the truth of Martinez's assertions. Of course, if Martinez did not receive any such information from the INS but misunderstood the applicable law or what the INS was indicating, there would be absolutely no basis for equitable tolling.

WESTLAW   © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 1181260
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Angel ROMERO, Petitioner,
v.
Robert ERCOLE, Superintendent of Green
Haven Correctional Facility, Respondent.

No. 08–CV–4983 (RRM).
|
April 30, 2009.

**Attorneys and Law Firms**

Angel Romero, Stormville, NY, pro se.

*MEMORANDUM AND ORDER*

MAUSKOPF, District Judge.

 **\*1** Petitioner Angel Romero ("Romero") filed a petition
for a writ of *habeas corpus* dated December 2, 2008
(Docket No. 1). By Memorandum and Order dated
January 15, 2009, the Court directed Romero to show
cause why his petition should not be dismissed as time-
barred pursuant to the one-year statute of limitations
prescribed by the Antiterrorism and Effective Death
Penalty Act of 1996 ("AEDPA"). *See Romero v. Ercole,
No. 08–CV–4983(RRM), 2009 U.S. Dist. LEXIS 3181,
at \*6, 2009 WL 112598, at \*3 (E.D.N.Y. Jan.15, 2009)*
("*Romero I*"). Romero timely filed an affirmation
(Docket No. 3) in response to the Court's Order in *Romero
I.* Based on Romero's submissions, and for the reasons set
forth below, the petition is DISMISSED as time-barred.

## BACKGROUND

### A. State court proceedings

In 2000, a grand jury in Queens County, New York
indicted Romero on charges of first and second degree
rape, first and second degree sodomy, first and second
degree sexual abuse, and endangering the welfare of a
child. After trial, a jury found Romero guilty of all
charges with the exception of four of the twelve charged
counts of sexual abuse. By judgment entered on May

22, 2002, the New York State Supreme Court, Queens
County sentenced Romero to numerous concurrent
and consecutive terms of incarceration resulting in an
aggregate sentence of 25 years in prison.

Romero subsequently appealed and, by opinion issued
October 27, 2003, the New York State Supreme Court,
Appellate Division, Second Department (the "Appellate
Division") affirmed Romero's convictions with the
exception of two counts of sexual abuse that were
previously dismissed but erroneously submitted to the
jury. *People v. Romero.* 309 A.D.2d 953, 953 (2d Dep't
2003). The New York State Court of Appeals denied
Romero's application for leave to appeal from that
decision on December 30, 2003. *People v. Romero,* 807
N.E.2d 908, 908 (N.Y.2003).

### B. The instant petition

Romero's petition, filed December 2, 2008, attaches five
documents: (1) an incomplete copy of Romero's brief
submitted to the Appellate Division on direct appeal; [1]
(2) a Short Form Order issued by the New York State
Supreme Court, Queens County (Katz, J.), dated May 20,
2004, denying Romero's April 20, 2004 motion seeking
DNA testing and a copy of his trial transcript; (3) the
State's opposition to a second post-trial motion filed
by Romero on August 9, 2005; (4) a New York State
Department of Correctional Services "Legal Assistance
Form," dated September 2008, authorizing Romero to
receive legal assistance from a fellow inmate; and (5)
a four-page affidavit by Romero, requesting equitable
tolling of the statute of limitations.

In his affidavit requesting equitable tolling, Romero
began by stating that he "does not understand the nature
of legal process in the realm of Federal Habeas Corpus
proceeding[s]." (Docket No. 1 at 29.) Next, Romero added
the following:

> Mr. Romero has no law clerk
> assist [*sic* ] in preparing his Habeas
> Corpus. This inmate obviously did
> not know what he was doing
> considering the fact that the only
> papers Mr. Romero had at the time
> was his half appellate brief, in any
> even [*sic* ] he does not have a
> complete set of the trial transcripts,
> Court Decision and other document

was destroyed by the Correctional Facility. (See Exhibit, A–B).

**\*2** (*Id.*) The referenced exhibits A and B were the incomplete copy of Romero's appellate brief and the State's opposition to Romero's August 9, 2005 motion, respectively. Romero did not specify what document or documents were destroyed by the "Correctional Facility" or provide any support for that contention. Nor did Romero explain what "time" he was referring to in claiming that he had insufficient documents.

In the third paragraph of his affidavit, Romero wrote the following:

> If it were not for one of Mr. Romero's good friend [*sic* ], the not law clerk, who was transferred from Sullivan Correctional Facility dated August 1, 2008 [*sic* ], Mr. William Figueroa, 91 A 2142, Loc/ A6–354, who is responsible for writing the instant motion, Mr. Romero would never know about the AEDPA statute of limitation [*sic* ]. Clearly, petitioner herein, a lay-person having a minimal education background, is hardly a reasonable substitute for the legal representation to which every defendant is lawfully entitled.

(*Id.*) Finally, Romero asserted his difficulty with the English language as a ground for equitable tolling. Romero averred that he cannot "speak or read English" and, citing *Diaz v. Kelly,* 515 F.3d 149 (2d Cir.2008), argued that "English language deficiency can warrant tolling of the AEDPA limitation period...." (Docket No. 1 at 30.)

### C. The Court's January 16, 2009 Order

On January 16, 2009, the Court issued *Romero I,* observing that the petition appeared time-barred pursuant to the AEDPA's one-year statute of limitations and directing Romero to show cause why it should not be dismissed on that basis. *Romero I,* 2009 U.S. Dist. LEXIS 3181, at \*6, 2009 WL 112598, at \*3. In that Order, the Court noted that equitable tolling is ' "only appropriate in rare and exceptional cases." ' *Id.,* 2009 U.S. Dist.

LEXIS 3181, at \*3–4, 2009 WL 112598, at \*2 (quoting *Smaldone v. Senkowski,* 273 F.3d 133, 138 (2d Cir.2001)). Specifically, the Court advised Romero that a petitioner seeking equitable tolling ' 'must demonstrate that he acted with reasonable diligence during the period he wishes to have tolled, but that despite his efforts, extraordinary circumstances beyond his control prevented successful filing during that time.' " *Id.,* 2009 U.S. Dist. LEXIS 3181, at \*4, 2009 WL 112598, at \*2 (quoting *Smaldone,* 273 F.3d at 138).

As for Romero's assertion that his lack of English language proficiency merit ed equitable tolling, the Court clarified that the Second Circuit's holding in *Diaz* imposed a "substantial obligation" on a *habeas* petitioner seeking tolling "to make all reasonable efforts to obtain assistance to mitigate his language deficiency." *Id.,* 2009 U.S. Dist. LEXIS 3181, at \*6, 2009 WL 112598, at \*3 (quoting *Diaz,* 515 F.3d at 154).

The Court therefore provided Romero 45 days within which to show cause why his petition should not be dismissed. As for Romero's request for equitable tolling, the Court directed Romero to present the facts supporting his request in the form of an affirmation accompanied by any available documentary evidence supporting his allegations. Although it was unclear whether Romero was seeking statutory tolling in addition to his request for equitable tolling, for the sake of completeness and in an abundance of caution, the Court directed Romero to "identify any post-conviction motions he filed in state court and [to] give the dates on which they were filed and decided." *Id,* 2009 U.S. Dist. LEXIS 3181, at \*6–7, 2009 WL 112598, at \*3.

**\*3** Regarding Romero's request for equitable tolling based on the language barrier, the Court directed Romero to "identify the extent of his language deficiency and explain what efforts he made to learn about the requirements for filing and to seek assistance in his language, including any efforts to contact anyone outside of his facility." *Id.* (citing *Diaz,* 515 F.3d at 154). That directive was highly significant in light of *Diaz* because, in that case, the Second Circuit held that "[e]quitable tolling was properly rejected" in the cases of two *habeas* petitioners who failed to allege "any efforts to contact anyone outside the prison who might assist in making them aware, in their language, of the legal requirements for filing a habeas petition" and further failed to specify

"what efforts were made to learn of such requirements within their places of confinement." *Diaz,* 515 F.3d at 154.

### D. Romero's response to the
### Court's January 16, 2009 Order

Romero's affirmation in response to the Court's Order to Show Cause, dated February 24, 2009, consists of four paragraphs. In the first paragraph, Romero argues that the "petition should not be time-barred by the AEDPA's one-year statute of limitations because petitioner was not only separated from his legal papers for a substantial period of time, he is one who does not understand the nature or legal process in the realm of section 2254 of the United States Code as it was amended by the AEDPA in 1996." (Docket No. 3 at ¶ 1.)

In the second paragraph, Romero notes that although he had an attorney to represent him at trial and an "interpreter" to help him during appellate proceedings, those individuals "did not explain how he filed his writ of Habeas Corpus relief on a relevant time period [*sic* ]." Romero further states that he "was unable to find someone to help him translation [*sic* ] with the one-year limitations period of AEDPA at the time of his habeas application." Romero cites the Second Circuit's decision in *Zarvela v. Artuz,* 254 F.3d 374 (2d Cir.2001), for the proposition that the Second Circuit has recognized that "[t]he procedural complexities confronting a habeas petitioner proceeding under the AEDPA of 1996, are considerable." (Docket No. 3 at ¶ 2 .)

In the third paragraph, Romero states that while his need for assistance in understanding the legal process is common among *pro se* prisoners who cannot read English, "that does not imply that he speaks or read Spanish [*sic* ] at a level such that he could understand legal exist [*sic* ] or the AEDPA." (*Id.* at ¶ 3.) Romero adds that "[t]he New York Department of Correctional Services was under no duty to provide access to legal materials in a prisoner's preferred language." (*Id.*)

In the fourth and final paragraph, Romero states that he had a "non law clerk" assist him in preparing a motion filed in State court pursuant to New York Criminal Procedure Law § 440, seeking a copy of his trial transcript and certain DNA evidence and/or testing. (*Id.* at ¶ 4.) Romero states that "[t]his non law clerk obviously did not know what he was doing considering the AEDPA establishes a ... 1 year period of limitation in connection

with an application for a writ of Habeas Corpus." (*Id.*) Romero concludes with the fact that, on August 1, 2008, a Spanish-speaking inmate named William Figueroa arrived, and that Mr. Figueroa provided Romero with "translation assistance" and helped him file the instant *habeas* petition.

### DISCUSSION

**\*4** In addition to regulating the procedure for the commencement of federal *habeas* cases, the AEDPA's one-year statute of limitations "also implicates values beyond the concerns of the parties." *Acosta v. Artuz,* 221 F.3d 117, 123 (2d Cir.2000). The statute of limitations serves the laudable goals of " 'streamlining the *habeas* review process and lending finality to state convictions.' " *Id.* (quoting *Walker v. Artuz,* 208 F.3d 357, 361 (2d Cir.2000)). As the Second Circuit has explained:

> The AEDPA statute of limitation promotes judicial efficiency and conservation of judicial resources, safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments within a reasonable time. Like the other procedural bars to *habeas* review of state court judgments, the statute of limitation implicates the interests of both the federal and state courts, as well as the interests of society, and therefore "it is not inappropriate for the court, on its own motion, to invoke the doctrine."

*Id.* (quoting *Brown v. Fauver,* 819 F.2d 395, 398 (3d Cir.1987)). Given the importance of those interests, the AEDPA's statute of limitations is subject to equitable tolling only in "rare and exceptional" circumstances. *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000).

At the same time, the AEDPA's statute of limitations must work in conjunction with the AEDPA's exhaustion requirement, set forth in 28 U.S.C. § 2254(b)(1), which promotes principles of comity and federalism by affording state courts the opportunity to correct alleged constitutional violations in the first instance. *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). For that reason, 28 U.S.C. § 2244(d) (2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim

is pending shall not be counted toward" the AEDPA's statute of limitations. Working in tandem, the AEDPA's exhaustion and statute of limitations provisions advance the geminate goals of comity and finality in the conduct of federal *habeas* proceedings. As the Supreme Court wrote in *Duncan v. Walker:*

> The tolling provision of § 2244(d) (2) balances the interests served by the exhaustion requirement and the limitation period. Section 2244(d) (2) promotes the exhaustion of state remedies by protecting a state prisoner's ability later to apply for federal *habeas* relief while state remedies are being pursued. At the same time, the provision limits the harm to the interest in finality by according tolling effect only to "properly filed application [s]...."

533 U.S. 167, 179–180, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (quoting 28 U.S.C. § 2254(d)(2)).

### A. The relevant limitations period governing Romero's *habeas* petition

In light of the facts that (1) the New York Court of Appeals denied Romero's application for leave to appeal on December 30, 2003, see *Romero,* 807 N.E.2d at 908, and (2) Romero did not seek a writ of *certiorari* from the United States Supreme Court, see Docket No. 1 at 2, ¶ 10(g), Romero's conviction became final for purposes of the AEDPA's one-year statute of limitations on March 29, 2004, at the conclusion of the 90–day period within which Romero could have filed a petition for a writ of *certiorari. See Fernandez v. Artuz,* 402 F.3d 111, 112 (2d Cir.2006). As such, "[a]bsent a properly filed state application for collateral review, the AEDPA one-year statute of limitations was set to expire" on March 29, 2005. *Id.* (quotation omitted).

### B. Statutory tolling

**\*5** As noted above, 28 U.S.C. § 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the AEDPA's one-year statute of limitations period for filing a § 2254 *habeas* petition.

Although the Court ordered Romero to "identify any post-conviction motions he file in state court and [to] give the dates on which they were filed and decided," *Romero I,* 2009 U.S. Dist. LEXIS 3181, at \*6–7, 2009 WL 112598, at \*3, Romero did not address that directive in his affirmation and provided no additional documents or other information regarding any application or motion that might impact the statute of limitations.

Assuming *arguendo* that Romero's April 20, 2004 motion seeking DNA testing and a copy of his trial transcript was both (1) properly filed and (2) of a type that would fall within the purview of 28 U.S .C. § 2244(d)(2), the Court can only exclude the 30–day period that elapsed from the date on which Romero filed the motion—April 20, 2004—and the date on which the State court decided the motion—May 20, 2004. As such, the statute of limitations expired on April 28, 2005, the date 30 days after March 29, 2005, the date on which the statute otherwise would have expired. The only other motion or application referred to in Romero's submissions was a motion filed on August 9, 2005, the State's opposition to which was included in Romero's initial submission. Again assuming *arguendo* that the August 9, 2005 motion was both (1) properly filed and (2) of a type that would fall within the purview of 28 U.S.C. § 2244(d)(2), it could not have tolled the statute of limitations, which had expired more than three months earlier. Because Romero has neither alleged nor presented evidence of any other post-conviction motion or application, statutory tolling under 28 U.S.C. § 2244(d)(2) cannot render Romero's petition timely under the statute of limitations.

### C. Equitable tolling

Construing Romero's submissions liberally, as the Court must, see *Ajlani v. Chertoff,* 545 F.3d 229, 235 (2d Cir.2008), the Court discerns three potential bases for Romero's request for equitable tolling in this case: (1) Romero is a non-lawyer and received no legal assistance in preparing his *habeas* petition; (2) Romero lacked a copy of the trial transcript and a complete set of legal papers; and (3) Romero lacks English language proficiency. Although the Court is sensitive to the difficulties facing Romero as a *pro se* prisoner who lacks familiarity with the English language, Romero has not demonstrated his entitlement to equitable tolling in this case.

### 1. Lack of legal knowledge and legal assistance

As an initial matter, there is no right to counsel in *habeas corpus* proceedings, see *Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *Love v. McCray,* 413 F.3d 192, 194 n. 1 (2d Cir.2005), and neither Romero's lack of legal assistance nor his own lack of legal knowledge provides a basis for equitably tolling the statute of limitations. [2] Moreover, courts have repeatedly held in the *habeas* context that "ignorance of the law is not grounds for equitable tolling." *Ruiz v. Poole,* 566 F.Supp.2d 336, 338 (S.D.N.Y.2008); *see also United States v. Griffin,* 58 F.Supp.2d 863, 868 (N.D.Ill.1999) ("run-of-the-mill claim of ignorance of the law" held insufficient to warrant equitable tolling of *habeas* statute of limitations); *Fadayiro v. United States,* 30 F.Supp.2d 772, 778 (D.N.J.1998) ("Ignorance of the law does not justify equitable tolling of a statute of limitations.").

**\*6** Indeed, in his initial submission, Romero stated that he was unaware of the applicable statute of limitations until the arrival of Mr. Figueroa in August 2008. (Docket No. 1 at 29.) Nowhere in his submissions does Romero allege that he made any effort to prepare or file his *habeas* petition prior to Mr. Figueroa's arrival, which came more than three years after the statute of limitations had already run. As such, Romero has not demonstrated "that he acted with 'reasonable diligence' during the period he wishes to have tolled." *See Smaldone,* 273 F.3d at 138 (quoting *Smith,* 208 F.3d at 17).

### 2. Lack of trial transcript and legal papers

To the extent that Romero seeks equitable tolling on the basis of his lack of access to his trial transcript or other legal papers, those allegations do not entitle him to equitable tolling. As the Second Circuit noted in *Crawford v. Costello,* 27 Fed. Appx. 57 (2d Cir.2001) (unpublished), "[b]ecause there is no constitutional right to a trial transcript for collateral appeals," the state's denial of a petitioner's request for a transcript "[does] not constitute an unconstitutional impediment sufficient to toll the statute of limitations." *Id.* at 59 (citing *United States v. MacCollom,* 426 U.S. 317, 323–24, 96 S.Ct. 2086, 48 L.Ed.2d 666 (1976); *Crossley v. United States,* 538 F.2d 508, 509 (2d Cir.1976)). Moreover, Romero's lack of a transcript did not prevent him from filing a *habeas* petition. *See id.* (citing *Jihad v. Hvass,* 267 F.3d 803, 806 (8th Cir.2001) ("Lack of access to a trial transcript does not preclude a petitioner from commencing post-

conviction proceedings and therefore does not warrant equitable tolling.")). That fact is well demonstrated here, as Romero ultimately did file his *habeas* petition despite the fact that he still lacks a copy of his trial transcript and whatever other papers he claims were "destroyed by the Correctional Facility." (Docket No. 1 at 29.)

### 3. Lack of English language proficiency

Finally, Romero is not entitled to equitable tolling based on his lack of English language ability. As in the cases of the two *habeas* petitioners for whom equitable tolling was rejected in *Diaz,* Romero has alleged "nothing more than the unavailability of personnel within [his prison] who could translate for [him] during the applicable limitations" period. *Diaz,* 515 F.3d at 154. Romero fails to allege "any efforts to contact anyone outside the prison" who might assist in making him aware, in his language, of the legal requirements for filing a habeas petition, and further fails to allege any efforts to learn of such requirements within his place of confinement. *Id.* Having failed to allege *any* efforts "to obtain assistance with his language deficiency," Romero certainly has not met his "substantial obligation to make *all* reasonable efforts" to do so. *Id.* (emphasis added).

### CONCLUSION

For the reasons set forth above, petitioner Angel Romero has failed to establish his entitlement to either statutory or equitable tolling of the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1). Accordingly, the petition is DISMISSED as time-barred. As petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole,* 209 F.3d 107, 112–13 (2d Cir.2000). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from the Court's Order would not be taken in good faith. *Coppedge v. United States,* 369 U.S. 438, 444, 82 S.Ct. 917, 8 L.Ed.2d 21.45 (1962).

**\*7** SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2009 WL 1181260

Footnotes

1    Exhibit A to the petition consists of the cover page, table of contents, and pages 1 through 17 of Romero's appellate brief. According to the table of contents, however, the appellate brief consists of at least 27 pages.

2    *See, e.g., Francis v. Miller,* 198 F.Supp.2d 232, 235 (E.D.N.Y.2002) (*habeas* petitioner's assertions "that he has limited education, is ignorant of the law and legal procedure, lacked funds to hire another attorney, had limited access to legal assistance that was available to prisoners, and was allowed limited use of the prison law library" held not to constitute "extraordinary circumstances" sufficient to toll the statute of limitations); *Stokes v. Miller,* 216 F.Supp.2d 169, 172 (S.D.N.Y.2000) ("Problems such as insufficiency of legal assistance are not 'extraordinary' such that they warrant equitable tolling of the AEDPA limitation period." (citations omitted)); *Fennell v. Artuz,* 14 F.Supp.2d 374, 377 (S.D.N.Y.1997) (*habeas* petitioner's claim that he was "uneducated and not familiar with legal research and legal procedures" held insufficient to equitably toll statute of limitations).

2014 WL 2215765
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jeremie SMITH, Petitioner,

v.

Anthony J. ANNUCCI, Acting Commissioner,
New York Department of Corrections and
Community Supervision, [1] Respondent.

No. 9:13–cv–00454–JKS.
|
Signed May 28, 2014.
|
Filed May 29, 2014.

**Attorneys and Law Firms**

Jeremie Smith, Oswego, NY, pro se.

Priscilla I. Steward, Lisa E. Fleischmann, New York State
Attorney General, New York, NY, for Respondent.

MEMORANDUM DECISION

JAMES K. SINGLETON, JR., Senior District Judge.

 **\*1** Jeremie Smith, a former New York state prisoner
currently on supervised parole, filed a *pro se* Petition
for Writ of Habeas Corpus with this Court on April 14,
2013. On August 1, 2013, Respondent filed a motion
requesting that it be permitted to limit its answer to the
issue of the timeliness of Smith's Petition. This Court
granted Respondent's request and required Respondent
to also address in its answer whether there was a basis
for equitable tolling or otherwise extending the statute of
limitations. Respondent answered, arguing that Smith's
Petition was untimely and that equitable tolling did
not apply. On March 20, 2014, this Court entered an
order granting Smith 30 days to file a supplemental brief
supporting with evidence his claim that equitable tolling
was warranted based on his alleged mental illness. Smith
was warned that if he failed to comply, or if he failed
to come forward with sufficient evidence that equitable
tolling is warranted, this Court would dismiss his Petition
as untimely. Smith filed a supplemental brief on April 4,
2014, and Respondent answered on April 24, 2014.

I. DISCUSSION

The Antiterrorism and Effective Death Penalty Act of
1996 ("AEDPA"), 28 U.S.C. § 2254(d), imposes a one-
year statute of limitations which runs from the latest of
four events: 1) the date on which the judgment became
final by the conclusion of direct review or the expiration
of time for seeking direct review; 2) the date on which
an impediment to filing an application created by state
action in violation of the Constitution or federal law is
removed; 3) the date on which the constitutional right
asserted was initially recognized by the Supreme Court, if
the right is newly recognized by the Supreme Court and
made retroactively applicable to cases on collateral review;
or 4) the date on which the factual predicate of the claim
or claims presented could have been discovered through
due diligence. 28 U.S.C. § 2244(d)(1).

Smith's judgment of conviction was entered on June 29,
2009, and he did not appeal. His judgment became final
30 days later, on July 29, 2009, when the time for filing a
notice of appeal expired. *See* N.Y. CRIM. PROC. LAW
("CPL") § 460.10. Under 28 U.S.C. § 2244(d)(1), Smith
generally would have had one year from that date to file
his Petition with this Court. *Bethea v. Girdich,* 293 F.3d
577, 578 (2d Cir.2002) (per curiam). In its March 20, 2014,
order, however, this Court assumed for the purposes of
determining whether to apply equitable tolling that the
statute of limitations would instead run from the date
Smith knew, or should have known through due diligence,
that his attorney did not file a notice of appeal on his
behalf. According to correspondence between Smith's
trial counsel and the state grievances committee, Smith
was aware on or before November 19, 2009, that his
attorney did not file a notice of appeal on his behalf. This
Court concluded that the applicable statute of limitations
therefore expired on November 19, 2010. *See* 28 U.S.C. §
2244(d)(1)(D).

 **\*2** In *Holland v. Florida,* the Supreme Court held that
AEDPA's one-year statute of limitations is subject to
equitable tolling "in appropriate cases." 560 U.S. 631,
645, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010). A petitioner
seeking equitable tolling bears the burden of establishing
two elements: 1) "that he has been pursuing his rights
diligently," and 2) "that some extraordinary circumstance
stood in his way" and prevented timely filing. *Id.* at 649

(quoting *Pace v. DiGuglielmo,* 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005)); *Diaz v. Kelly,* 515 F.3d 149, 153 (2d Cir.2008). The determination is made on a case-by-case basis. *Holland,* 560 U.S. at 649–50. "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." *Harper v. Ercole,* 648 F.3d 132, 137 (2d Cir.2011) (citations omitted).

The Second Circuit has held that AEDPA's one-year limitations period can be tolled on the basis of a petitioner's mental condition, depending on "how severe an obstacle [the illness] is for the prisoner endeavoring to comply with AEDPA's limitations period." *Bolarinwa v. Williams,* 593 F.3d 226, 231–32 (2d Cir.2010). As the Ninth Circuit has recognized, the *Bolarinwa* court "did not give content to its severity standard," leaving its development to the district court's " 'highly case-specific inquiry' " on remand. *Bills v. Clark,* 628 F.3d 1092, 1098 (9th Cir.2010) (quoting *Bolarinwa,* 593 F.3d at 232); *see also Victorial v. Burge,* 477 F.Supp.2d 652, 654–55 (S.D.N.Y.2007) (the Second Circuit "adheres to a case-specific approach" and has not developed a "bright line rule in determining when equitable tolling should apply in cases of mental illness"). The Second Circuit has suggested that in order to warrant equitable tolling on the basis of mental illness, a petitioner must show that "he was so incapable of rational thought that he could not appreciate his situation, or [that he] lacked the wherewithal to ascertain that he must take legal steps." *Rios v. Mazzuca,* 78 F. App'x 742, 744 (2d. Cir.2003). [2]

Smith bears the burden of establishing the appropriateness of tolling by offering a "particularized description of how [his] condition adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights." *Bolarinwa,* 593 F.3d at 232 (quoting *Boos v. Runyon,* 201 F.3d 178, 185 (2d Cir.2000)); *Holland,* 560 U.S. at 649 (petitioner bears the burden of demonstrating that equitable tolling is warranted). Smith may not rely on the absence of evidence or personal conclusions to prove that equitable tolling should be applied. *See Burt v. Titlow,* ––– U.S. ––––, ––––, 134 S.Ct. 10, 17, 187 L.Ed.2d 348 (2013) (habeas corpus petitioner cannot rely on the absence of evidence that counsel gave adequate advice to establish ineffective assistance of counsel); *Bowman v. Walsh,* No. 07–CV–3586, 2007 WL 2815711, at *4 (E.D.N.Y. Sept. 25, 2007)

(petitioner cannot rely solely on personal conclusions or assessments to establish that equitable tolling is warranted); *see also Rios,* 78 F. App'x at 744–75 (rejecting petitioner's argument that lack of evidence of mental illness indicated he was receiving no treatment and that his mental condition worsened to such an extent that he could not timely file his habeas petition). Rather, Smith must support his allegations with sufficient evidence to justify equitable tolling. *Bowman,* 2007 WL 2815711, at *4.

**\*3** A period of 1,243 days passed between November 19, 2009, the date on which Smith knew that counsel failed to file a notice of appeal on his behalf, and April 14, 2013, the date on which he filed his Petition with this Court. [3] Smith was required to provide evidence to support the conclusion that he was entitled to equitable tolling for 878 days of that period, which would bring his Petition within the one-year filing deadline. *Harper,* 648 F.3d at 142 (timeliness of petition subject to equitable tolling depends on its being filed within one year of the total untolled time after the challenged conviction became final). Smith has failed to carry his burden.

In support of his argument that he is entitled to equitable tolling, Smith has provided documentation that, while incarcerated, he was diagnosed with major depression, anxiety disorder, polysubstance abuse, antisocial behavior, and psychogenic dysphagia (psychological fear of swallowing or choking). Although Smith's submissions suggest that he has indeed struggled with mental health issues, Smith has failed to offer a particularized description of how his mental health has adversely affected his ability to pursue his legal rights. *Bolarinwa,* 593 F.3d at 232. His allegations that he felt "overwhelmed with feelings of hopelessness" and suffered "severe mood swings" are insufficient to establish the requisite causal relationship between his condition and his alleged inability to comply with AEDPA's 1–year statute of limitations. Moreover, the documents do not portray Smith as being incapable of rational thought or lacking the wherewithal to ascertain what legal steps he needed to take. *Rios,* 78 F. App'x at 744. Rather, his progress notes often describe him as having coherent, linear, and logical thoughts and fair judgment. One progress report in particular noted that Smith "did not present as acutely mentally ill but rather as a profound character disordered individual with multiple complaints against [the New York Department of Correctional Services]."

Unlike the petitioner in *Rios,* there is no evidence that Smith was ever declared incompetent to stand trial. *See* 78 F. App'x at 744. Nor is there any evidence that he has been civilly committed because he was unable to care for himself or presented a danger to himself or others. Nevertheless, Smith's submissions indicate that he was confined in some type of inpatient psychiatric care from December 29, 2009, until January 6, 2010 (9 days), from April 22, 2010, until May 10, 2010 (19 days), from July 14, 2010, until September 17, 2010 (66 days), September 22, 2010, until November 2, 2010 (42 days), and December 10, 2010, until December 23, 2010 (14 days), for a total of 150 days. As discussed in this Court's earlier order, however, confinement in a psychiatric facility within the New York state prison system, on its own, is also insufficient to justify tolling. *See Jean–Louis v. Greiner,* No. 02 Civ. 6326, 2003 WL 1807144, at *3 (S.D.N.Y.2003) ("Even if petitioner had been locked in the [psychiatric treatment facility] during the relevant time period, this would not serve to toll the limitations period unless it prevented petitioner from pursuing his legal rights. Court have generally held that solitary confinement and hospitalizations are not the types of extraordinary circumstances that warrant equitable tolling."); *see also Corrigan v. Barbery,* 371 F.Supp.2d 325, 330 (W.D.N.Y.2005) ("In general, the difficulties attendant on prison life, such as transfers between facilities, solitary confinement, lockdowns, restricted access to the law library, and an inability to secure court documents, do not by themselves qualify as extraordinary or rare circumstances."); *Saldana v. Artuz,* No. 99 Civ. 5089, 2000 WL 1346851, at *2 (S.D.N.Y. Sept. 19, 2000) (spending six months in "lock down" is not an extraordinary circumstance warranting tolling). Rather, Smith must show that his confinement prevented him from pursuing his legal rights. *Jean–Louis, 2003 WL 1807144, at *3.* According to the documents he provides, Smith was admitted to inpatient care at one point for refusing medication, telling a nurse he was depressed, and alluding to suicidal thoughts. At another time, he received inpatient care for going on a hunger strike and for having suicidal ideations. His progress notes suggest that the hunger strike and suicidal ideations were a manipulation by Smith to keep himself in medical care and out of the general jail population. Such confinement does not amount to an extraordinary circumstance warranting equitable tolling, and in any event, Smith has failed to even assert how those periods of inpatient care prevented him from timely filing his Petition.

**\*4** Smith asserts that for an unidentified period of time during his psychiatric confinement he was not allowed to send out or receive mail and did not have access to pen, paper, envelopes or legal material. It is not clear whether this amounts to an extraordinary circumstance, and even if it did, Smith would still have to establish a causal relationship between his lack of access to materials and the lateness of his filing. *See Corrigan,* 371 F.Supp.2d at 330 (restricted access to law library and court documents is not an "extraordinary circumstance[ ]"); *Valverde v. Stinson,* 224 F.3d 129, 133–34 (2d Cir.2000) (although the *intentional* confiscation of a prisoner's habeas corpus petition and related legal materials by a corrections officer is "extraordinary" as a matter of law, the petition must show that the confiscation prevented him from filing on time); *Watson v. Smith,* 268 F. App'x 86, 86 (2d Cir.2008) (assuming arguendo that lack of access to state law materials could constitute an extraordinary circumstance, equitable tolling was unwarranted because petitioner failed to demonstrate a causal relationship between the alleged circumstance and the lateness of his filing). Nevertheless, even if this Court gave Smith the benefit of every doubt and concluded that he was entitled to tolling for the entire 150 days of inpatient confinement due to his lack of access to writing materials and/or incompetence to pursue his legal rights, Smith would still have to establish that he was entitled to equitable tolling for an additional 728 days to bring him within the statute of limitations. He has failed to carry such burden.

Moreover, Smith's conduct indicates that he was generally capable of pursuing his legal rights despite his alleged mental illness. Smith filed his *pro se* motion for leave to file a late notice of appeal on April 7, 2011, his *pro se* motion to vacate the judgment in state court on February 9, 2012, his leave for judgment from that denial on November 27, 2012, and his Petition for Writ of Habeas Corpus with this Court on April 14, 2013. Smith also filed a 42 U.S.C. § 1983 civil action against 40 DOCCS staff members of the Five Points Correctional Facility while he was incarcerated, although he does not state when he filed it. Smith has failed to address how he was able to file those various briefs while suffering from mental illness and yet was unable to comply with the AEDPA filing deadline. Smith's conduct cuts against any argument that "he was so incapable of rational thought that he could not appreciate his situation, or [that he] lacked the wherewithal to ascertain that he must take legal steps." *Rios,* 78 F. App'x at 744.

Lastly, Smith does not request an evidentiary hearing, and this Court will not *sua sponte* order one. "A district court has broad discretion to hear further evidence in habeas cases." *Nieblas v. Smith,* 204 F.3d 29, 31 (2d Cir.1999). "[W]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Bracy v. Gramley,* 520 U.S. 899, 908–09, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997) (quoting *Harris v. Nelson,* 394 U.S. 286, 300, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969)); *see also Schriro v. Landrigan,* 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."). This Court has provided Smith with the opportunity to supplement the record in support of his claim and concludes that further expansion of the record through an evidentiary hearing would not establish that Smith is entitled to relief.

**\*5** In sum, this Court hereby dismisses Smith's Petition as untimely. The evidence provided by Smith demonstrates that during the majority of time he wishes to toll he was able to function in the general prison population and to pursue his legal rights. Equitable tolling based on mental illness is not justified in this case.

## II. CONCLUSION

**IT IS THEREFORE ORDERED THAT** Smith's Petition for a Writ of Habeas Corpus is **DISMISSED** as untimely. 28 U.S.C. 2244(d)(1) (D); *Bolarinwa,* 593 F.3d at 232.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.' " (quoting *Miller–El v. Cockrell,* 537 U.S. 322, 327, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003))). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R.APP. P. 22(b); 2D CIR. R. 22.1.

## All Citations

Not Reported in F.Supp.3d, 2014 WL 2215765

## Footnotes

1  Smith was released from prison on March 25, 2014, and is currently on supervised parole. *See* http://nysdoccslookup.doccs .ny.gov/ (DOCCS # 09B2058). Accordingly, Anthony J. Annucci, Acting Superintendent, New York Department of Corrections and Community Supervision, is substituted for Steven Racette, Superintendent, Great Meadow Correctional Facility. FED. R. CIV. P. 25(c).

2  *Rios* is a "summary order" decided in 2003 which "was not selected for publication in the Federal Reporter." 78 F. App'x at 742. Federal Rule of Appellate Procedure 32.1 ("Citing Judicial Dispositions") states that a court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments or other written dispositions issued after January 1, 2007, which have been designated as "unpublished," "not for publication," "non-precedential," etc. FED. R.APP. P. 32.1(a). This rule, however, is "extremely limited" and "says nothing about what effect a court must give to one of its unpublished opinions or to the unpublished opinions of another court." FED. R.APP. P. 32. 1, Committee Notes on Rules (2006). Second Circuit Local Rule 32.1 .1 states that "[r]ulings by summary order do not have precedential effect." 2D CIR. R. 32.1.1(a). Although the local rule generally prohibits a party from citing to summary orders issued prior to January 1, 2007, it does not restrict a court's use of unpublished opinions. *Id.* at 32.1.1(b)(2). In discussing a court's citation to unpublished opinions, the Second Circuit has noted, "We do not suggest that published district court opinions are more persuasive than unpublished district court opinions; nor do we discourage district courts from citing to an unpublished opinion that is, for any reason, more appropriate than a published one." *Lebron v. Sanders,* 557 F.3d 76, 78–79 & n. 7 (2d Cir.2009) (per curiam). A number of federal courts in this circuit have similarly cited to and relied on *Rios* in determining whether equitable tolling due to mental illness is appropriate. *See, e.g., Green v. Sheehan,* No. 1:12–cv–0665, 2014 WL 338832, at \*5 (W.D.N.Y. Jan.30, 2014) (petitioner failed to demonstrate, pursuant to *Rios,* sufficient evidence that "he was so incapable of rational thought that he could not appreciate his situation, or lacked the wherewithal to ascertain legal steps," and thus equitable tolling was not warranted); *Muhammad v. Rabinowitz,* No. 11 Civ. 2428, 2012 WL 1155098, at \*3 n. 3

(S.D.N.Y. Apr. 6, 2012) (plaintiff in prisoner's civil rights action failed to establish severe mental illness under *Rios* ); *Florio v. Cuomo,* No. 10 Civ. 0998, 2010 WL 5222123, at *11 (S.D.N.Y. Nov. 16, 2010) (citing to *Rios* in concluding that petitioner failed to establish that his mental state justified equitable tolling), *report and recommendation adopted in full at* 2011 WL 223217, at *1 (S.D.N.Y. Jan.24, 2011); *United States v. Williams,* No. 05 Civ. 8165, 2006 WL 2034642, at *3 (S.D.N.Y. July 19, 2006) (citing *Rios* and concluding that petitioner failed to establish equitable tolling based on mental illness).

3   This Court stated in its previous order that a period of 886 days passed between November 19, 2010, and April 14, 2013, the date on which Smith filed his Petition with this Court. That calculation was incorrect—878 days passed between those two dates. In addition, Smith was aware of his attorney's failure to notice an appeal on or before November 19, 2009, not November 19, 2010. He must thus show that he is entitled to equitable tolling for all but 365 of the 1,243 days that passed between November 19, 2009, and April 14, 2013.

---